STATE of Missouri, Respondent,

v.

Charles D.
NIEDERSCHULTE, Appellant.

No. WD 39333.

Missouri Court of Appeals,
Western District.

March 22, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 3, 1988.

Application to Transfer Denied
June 14, 1988.

Sean D. O'Brien, Public Defender, Patrick J. Berrigan, Asst. Public Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Scott L. Templeton, Asst. Atty. Gen., Jefferson City, for respondent.

Before LOWENSTEIN, P.J., and MANFORD and NUGENT, JJ.

LOWENSTEIN, Presiding Judge.

Niederschulte was convicted of Assault in the First Degree and Armed Criminal Action, both Class A felonies, and received consecutive sentences of fifteen and five years respectively. He brings this appeal alleging the court erred by refusing to submit to the jury his proffered instructions on the assault count with a "sudden passion" paragraph which if believed by the jury would have resulted in a conviction for only second degree assault. It is Niederschulte's opinion there was evidence his assault resulted from sufficiently provoked sudden passion arising out of the provocation of the victim.

The parties agree the question of whether the sudden passion paragraph should have been used turns on whether there was any evidence that Niederschulte acted under the influence of sudden passion arising out of adequate cause. For clarity, the facts relevant to the assault will be set out, followed by the instruction urged by the defendant.

The evidence at trial focused on the period of time between the evening hours of July 4, 1986 and the morning of July 5, and on the relationship between Niederschulte and his ex-wife Sandra Niederschulte. Although divorced for some four months, Mr. Niederschulte was a regular visitor at the home of his ex-wife, both to visit her children whom he had earlier adopted and to pursue a reconciliation and ultimate remarriage. At some time before the specific date noted, Niederschulte had come to the conclusion his hopes would not be realized. His ex-wife was starting to see another man, and in fact planned to spend the Fourth of July with this other man, despite Niederschulte's plans for spending the holiday "as a family." Apparently depressed over this state of affairs, Niederschulte got drunk with a neighbor of his ex-wife while waiting for her to return home. Ms. Niederschulte came home around 3:00 a.m. Ms. Niederschulte testified that during a conversation with her husband she became aware he was armed with a gun, and that he implied he was going to kill her, saying he had nothing to live for, wasn't going to live without his ex-wife, and wasn't going to go alone. The police arrived, and confronted Niederschulte with a shotgun. He ignored their orders to surrender, encouraging them to go ahead and shoot him. He was then subdued and removed to jail. Niederschulte testified that because of his intoxication he remembered nothing except having his gun taken away and being removed from the house in handcuffs.

Niederschulte bonded himself out of jail and returned to his ex-wife's house. She would not talk to him. He returned to his apartment, got another gun from his collection of guns and again went back to his ex-wife's. They talked in the backyard, a forty-five minute conversation interrupted at least twice by Ms. Niederschulte's trips to the house. The conversation involved unresolved problems in the way of any plans to remarry. During one of his ex-wife's trips inside, Niederschulte was observed by one of the children hiding something behind a tree located in the yard. According to Ms. Niederschulte, at one point her ex-husband asked her, "Where do I shoot to kill somebody ... Do I shoot them in the mouth, do I shoot them in the chest?" After extracting promises from him not to hurt the children or her, she attempted to terminate the conversation, telling him to go home and she would talk to him later. She turned to walk away and found herself on the ground fighting to keep Niederschulte from placing a gun in her mouth. The gun discharged twice during the struggle, one shot hitting the victim in the ear and neck, the other in the chest. Niederschulte waited in the yard until the police arrived. He testified, "it felt like something just happened in me," that he pushed her down and while wrestling with her the gun went off. He said he did not recall telling the police he pushed her down and fired one shot into her chest. On these facts, Niederschulte argues that his ex-wife's attempt to terminate the conversation was the "straw that broke the camel's back," provoking him to shoot her. On these facts the defendant offered this instruction:

## INSTRUCTION B

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about July 5, 1986, in the County of Jackson, State of Missouri, the defendant attempted to kill Sandra L. Niederschulte by shooting her, and

Second, that defendant in the course of such conduct caused serious physical injury to Sandra L. Niederschulte, and

Third, that defendant did not act under the influence of sudden passion arising out of adequate cause,

then you will find the defendant guilty under Count I of assault in the first degree with serious physical injury.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense under this instruction.

As used in this instruction, the term "serious physical injury" means physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body.

As used in this instruction, the term "sudden passion" means passion directly caused by and arising out of provocation by Sandra L. Niederschulte which passion arose at the time of the offense and was not solely the result of former provocation. The term "adequate cause" means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

If you do find the defendant guilty under Count I of assault in the first degree with serious physical injury, you will assess and declare one of the following punishments:

1. Life imprisonment.

2. Imprisonment for a term of years fixed by you, but not less than ten years and not to exceed thirty years. MAI–CR3d 319.06 and 304.02, Submitted by Defendant.

The Notes on Use for MAI–CR3d 319.06 provide that first degree assault is mitigated to second degree "when the defendant acted under the influence of sudden passion," that it is the defendant's burden to inject the issue, and that the "sudden passion" paragraph should not be used unless supported by evidence of that mitigating factor. Note 4. The instruction submitted to the jury by the court did not include either the "sudden passion" paragraph or the "sudden passion" and "adequate cause" definitions. The trial court did not believe the circumstances of the shooting mitigated Niederschulte's action to instruct and submit a lesser included offense. This court agrees. The testimony at trial as reflected in the transcript does not support the contention that Niederschulte acted under the influence of sudden passion arising out of adequate cause.

The instruction set out above reflects Missouri's statutory definitions: " 'sudden passion' means passion directly caused by and arising out of provocation by the victim ... which passion arises at the time of the offense and is not solely the result of former provocation." *State v. Denney,* 725 S.W.2d 921, 923 (Mo.App.1987); § 565.002(7), RSMo 1986. " 'Adequate cause' means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity to self-control. *State v. Denney,* 725 S.W.2d at 923; § 565.002(1), RSMo 1986. Niederschulte's argument for submission of his instruction fails under both definitions. First, he came to the ex-wife's armed with a handgun on two separate occasions which infers some contemplation of his subsequent course of action. He also asked the victim where he'd shoot to kill prior to his allegedly "provoked act." Second, his ex-wife's statement was not provocative under any interpretation. She merely told him to go home and she'd talk to him later. This statement, coming at the end of a forty-five minute discussion, obviously left unresolved the couple's problem and left open the possibility of further discussion. Niederschulte's own testimony did not relate to provocation by his wife,

**494**

but to "something just happen[ing]" to him before he pushed her down and shot her. Provocation was not present in this case. Even if it were to be assumed provocation existed, which is doubtful, there is absolutely no evidence of "adequate cause." The statement attributed to [Ms. Niederschulte] would not *'reasonably* produce a degree of passion in a person of *ordinary* temperament sufficient to substantially impair an *ordinary* person's capacity for self-control.' " *State v. Tate,* 733 S.W.2d 45, 50 (Mo.App.1987). Ms. Niederschulte's statement to her ex-husband did no more than confirm what he already felt and was not adequate nor sufficient to excuse his subsequent action.

The evidence, even given its best intendment, did not make a submissible issue of "sudden passion" arising from adequate cause within the statutory definitions or case law interpretation. *State v. Denney, supra,* at 924.

The judgment is affirmed.

All concur.