STATE of Missouri,
Plaintiff–Respondent,

v.

Larry Herbert WERNER,
Defendant–Appellant.

Larry Herbert WERNER,
Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 15798, 16636.

Missouri Court of Appeals,
Southern District,
Division One.

May 9, 1991.

Motion for Rehearing or Transfer
to Supreme Court Denied
May 31, 1991.

Application to Transfer Denied
July 23, 1991.

William L. Webster, Atty. Gen., M. Melissa Manda, Asst. Atty. Gen., Jefferson City, for the State.

Susan L. Hogan, Columbia, for Larry Herbert Werner.

MAUS, Presiding Judge.

Count I of an information charged that defendant, Larry H. Werner, committed murder in the first degree in that defendant, after deliberation, knowingly killed Calvin F. Long (Long) by shooting him. § 565.020.1. Count II charged that defendant committed that felony with a deadly weapon and was guilty of armed criminal action. § 571.015.1. The state waived the death penalty. The defendant entered a plea of not guilty by reason of mental disease or defect excluding responsibility. A jury found the defendant guilty of murder in the second degree, § 565.021.1(1), and armed criminal action. In accordance with the verdicts, the defendant was sentenced to terms of life imprisonment and three years' imprisonment, to be served concurrently. Defendant appeals those convictions. Defendant also filed a pro se and an amended motion for relief under Rule 29.15. That motion was denied by the motion court without an evidentiary hearing. Defendant also appeals that denial. The appeals have been consolidated.

On December 26, 1990, this court adopted an opinion affirming the judgments of criminal convictions and ordered defendant's motion for relief under Rule 29.15 dismissed as untimely because it was filed more than 30 days after the transcript was filed in this court. This court denied the defendant's motion for rehearing or transfer. The Supreme Court of Missouri, upon defendant's motion, ordered the appeals transferred to that court. Subsequently, the Supreme Court retransferred the appeals for reconsideration in light of *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991), and *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991).

Again, the appeals will be treated separately. *Luleff v. State*, supra, and *Sanders v. State*, supra, are directed to Rule 29.15 and will be considered in the portion of this opinion pertaining to the denial of defendant's motion under Rule 29.15.

*No. 15798—Direct Appeal*

The following is an outline of the factual background. Additional facts will be set forth as necessary for the consideration of defendant's two points. Defendant first met Long in the early 1970's. They became friends partly due to the fact they were both homosexual and married. After several years of friendship, defendant and Long came in contact again and began engaging in sexual activities in 1986. Defendant was in the process of the dissolution of his second marriage to his only wife. His wife was granted a decree of dissolution in April 1986. Long was still married but had been having marital difficulties. Both defendant and Long had children from their marriages. Defendant and Long lived together in various towns. In February 1987 defendant moved to a house owned by his parents on Greensferry Road in Jackson, Missouri. Long would periodically stay with defendant at the house in Jackson. The relationship between defendant and Long had been unstable for some time because Long was indecisive about whether he wanted to stay with defendant or return to his wife and son. Defendant became more and more upset about the status of the relationship. Defendant had received phone calls informing him that Long was seeing other men. Two weeks before he shot Long, defendant had packed Long's belongings and told him to leave defendant's house.

Defendant became depressed. He had previously been hospitalized for treatment of depression. He talked of suicide. He had apparently attempted suicide by an overdose of Xanax, Valium and anti-depressants. Defendant talked many times with Long about killing himself. On June 7, 1987, defendant bought a rifle, some flexible hose and tape, and had two prescriptions for Xanax filled. Long stayed with defendant the night of June 8, 1987. The

next morning, Long went to his shop to work as a hairdresser. He returned to the defendant's house that evening. The two spent the evening talking about their relationship.

Defendant was upset and during the course of the evening told Long that he knew he was going to shoot himself because he couldn't go on the way that things were going. Defendant and Long went to bed around 10 p.m. and lay in bed talking. When defendant continued to talk about dying, Long told him, "If you want to die so bad, go get that gun and shoot yourself and I will watch." Defendant went downstairs and waited for Long to come talk to him. When Long did not come downstairs, defendant went back upstairs and stood in the doorway. Long did not turn around. Defendant switched on the light, took the gun from behind the bedroom door and held the gun to his own head. When defendant told Long to watch defendant shoot himself, Long turned and told defendant not to do it. At the same time, Long mentioned something about his son Todd coming over to the house. Following that statement, defendant began shooting Long. Long was shot five times. One shot was in the right temple. Three shots were to the chest; one penetrated the heart, and another passed through the right lung. The fifth shot through the right forearm appeared to be a defensive wound.

After he shot Long, defendant went to the sheriff's office around 11:45 p.m. and told the officers that he had just shot Calvin Frank Long. When the police arrived at defendant's house, the rifle was found where defendant had indicated and Long was found nude in bed. He was pronounced dead at the scene.

The defendant testified. He related his marital problems, his recognition of his homosexuality, various homosexual relationships, and emotional and mental difficulties. He emphasized the intensity of his mental agitation and depression resulting from the unstable nature of his relationship with Long. He presented expert testimony that his depression was of such a degree that it was a mental disease and he was not guilty by mental disease or defect. The state presented expert testimony to the contrary.

After he related the earlier events of the ill-fated evening up to his return to the bedroom, the defendant was asked what happened next. His testimony then included the following.

"A He turned around and sort of sat up and grabbed a pillow that—I always slept with two pillows—and he scooted toward me. He scooted toward me.

Q How were you feeling at this time?

A I couldn't tell you.

Q Well, were you okay, feeling good?

A No. He wanted to watch me die.

Q Was anything else said?

A He said 'Don't do it. Don't do it.'

Q I can't hear you.

A He said 'Don't do it. Don't do it.'

Q Then what happened?

A And he turned toward me—he was already toward me and grabbed the pillow, and he said something about Todd, something about Todd could come to the house, and he just sat up—he wasn't sitting up. He was leaning on his arm, his left arm, with the pillow. And the next thing I knew—

Q The next thing you knew what?

A I was shooting him.

Q What did the statement 'Todd is coming,' did that cause you to react?

A I knew he was lying to me."

He later said he didn't know why he shot Long.

Defendant's first point is that the trial court erred in refusing the defendant's tendered instruction on the lesser included offense of voluntary manslaughter because there was evidence the defendant acted under the influence of "sudden passion". He argues that an instruction on voluntary manslaughter, § 565.023, was warranted because the jury "could have found Long's comment about Todd was enough to provoke (defendant) to violence."

 By the construction of § 565.021 and § 565.023, acting "under the influence of sudden passion arising from adequate cause", § 565.023.1(1), is a special negative

defense to the crime of conventional second degree murder. See MAI–CR 3d 304.11. If there is evidence supporting sudden passion from adequate cause, an instruction submitting conventional murder in the second degree must submit, as an element of the crime, a finding "that defendant did not do so under the influence of sudden passion arising from adequate cause". Further, an instruction on voluntary manslaughter shall be given upon the request of a party or on the court's own motion. MAI–CR 3d 313.04.

> "The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause...." § 565.023.1(2).

> "'**Sudden passion**' means passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." § 565.002(7).

> "'**Adequate cause**' means cause that would *reasonably produce* a degree of passion *in a person of ordinary temperament* sufficient to substantially impair *an ordinary person's* capacity for self-control." § 565.002(1). (Emphasis added.)

The objective standard set forth in the statute by which adequate cause is to be measured was not altered by the defendant's mental condition.

> "Moreover, the mere injection of the defense of mental disease or defect does not meet the burden of showing sudden passion. It is a distinct and wholly separate defense having no relevancy on the manslaughter issue. See [*State v.*] Hunter, supra, 755 S.W.2d [634] at 638 [ (Mo.App.1988) ]." *State v. Merchant,* 791 S.W.2d 840, 843 (Mo.App.1990).

Nor was that objective standard altered by the defendant's homosexuality. The standard is a "person of ordinary temperament" and "an ordinary person's capacity for self-control."

■ The statutes creating the special negative defense of sudden passion are primarily founded in the concept of a reaction to physical violence by the victim. The history of such a defense has been incisively reviewed in *State v. Simmons,* 751 S.W.2d 85 (Mo.App.1988), in which the court said:

> "Furthermore, while words, gestures or other actions may give rise to provocation it was the rule at common law and the general long-standing rule in Missouri that words, no matter how opprobrious or insulting are not sufficient to show 'adequate provocation.'" (Footnote omitted). *State v. Simmons,* supra at 91.

> "This state has repeatedly held that verbal provocation is insufficient to reduce a proven case of second degree murder to manslaughter. *State v. Hubbard,* 484 S.W.2d 224, 226 (Mo.1972); *State v. Mosley,* 415 S.W.2d 796, 799 (Mo.1967); and *State v. Taylor,* 309 S.W.2d 621, 624 (Mo.1958)." *State v. Cook,* 560 S.W.2d 299, 305 (Mo.App.1977).

See also Annot., Insulting Words as Provocation of Homicide or as Reducing the Degree Thereof, 2 A.L.R.3d 1292 (1965). Another view has been expressed in the following terms.

> "An inference of such 'heat of passion' arises when there has been a personal violence committed against the accused. Id.; see *State v. Singer,* 719 S.W.2d 818 (1986). A similar presumption, however, is not indulged when there is only verbal provocation. *State v. Cook,* 560 S.W.2d 299, 305 (Mo.App.1977)." *State v. Stribling,* 721 S.W.2d 48, 50 (Mo.App.1986).

It is not necessary for the disposition of this appeal to reconcile those viewpoints. There may be circumstances in which verbal provocation could produce a degree of passion in a person of ordinary temperament to impair an ordinary person's capacity for control, but there is no evidence of such circumstances in this case. This is subjectively demonstrated by the defendant's quoted testimony concerning his reaction to Long's remark about Todd. More fundamentally, the statement of Long, that his son was coming to the defendant's house, falls far short of provocation which would produce a degree of passion in a

person of ordinary temperament sufficient to result in an ordinary person shooting Long five times.

"While there may have been passion, there was not such passion so as to render a person of ordinary temperament incapable of reflection or such passion to obscure reason." *State v. Simmons*, supra at 91.

There was no evidence in this case to inject the issue of sudden passion. Cf. *State v. Merchant*, supra; *State v. Stribling*, supra; *State v. Cook*, supra; *State v. Niederschulte*, 750 S.W.2d 491 (Mo.App.1988); *State v. Tate*, 733 S.W.2d 45 (Mo.App.1987); *State v. Denney*, 725 S.W.2d 921 (Mo.App. 1987). The defendant's first point is denied.

■ The defendant's remaining point on direct appeal is that the trial court erred in admitting two photographs of Long's body. One was of his upper torso and showed bullet wounds to his forearm, chest and right temple. The second was a closer view of the head wound. In each picture blood had exuded from the wounds and Long's right ear. The defendant argues that the photographs were not necessary as there was no issue concerning the wounds or cause of death. Therefore he concludes that, because they were gruesome and inflammatory, their admission served no purpose except to prejudice the defendant and was reversible error.

"'A photograph is admissible if it accurately depicts the scene and tends to prove any elements of the charged offense, including issues of identification, *condition* and location of the body, *nature and location of the wounds*, and the *cause of death*.'" *State v. Schneider*, 736 S.W.2d 392, 403 (Mo. banc 1987). (Emphasis in original.)

The defendant was on trial for murder in the first degree. The number and location of the wounds as shown by the photographs tended to prove the defendant's deliberation and intent to kill, elements of that offense. "Insofar as these photographs are unpleasant, it is a reflection of the nature of the crime." *State v. Pollard*, 735 S.W.2d 345, 348 (Mo. banc 1987). The

trial court did not err in admitting them in evidence. Cf. *State v. Merchant*, supra. The defendant's last point has no merit and his direct appeal is denied.

### No. 16636—29.15 Appeal

Defendant states one point in his appeal from the denial of his motion under Rule 29.15. He contends the motion court erred because his motion pled that he was denied effective assistance of counsel. Specifically, defendant relies upon the allegation that trial counsel refused and failed "to introduce into evidence a flexible hose and a role of tape, which would have supported [defendant's] defense of mental disease or defect, by showing that [defendant] had made preparations to take his own life." This ground was pled in defendant's pro se motion and incorporated in his amended motion filed by appointed counsel.

Rule 29.15(b) provides that motions under the Rule must be filed within 30 days after the filing of the transcript on appeal. Defendant's initial motion was not so filed. The time limitation is generally held to be mandatory. *Smith v. State*, 798 S.W.2d 152 (Mo. banc 1990). It was on this basis the court ordered the motion dismissed.

Defendant's trial transcript was filed with this court on November 1, 1988. Defendant's pro se motion under Rule 29.15 was *not* filed until December 14, 1988. Defendant's motion was filed more than 30 days after the transcript was filed in defendant's direct appeal. In response to the invitation of this court, defendant argued that Rule 30.04 provides it is the duty of an appellant to file the transcript. He further argued that his motion under Rule 29.15 was timely because the transcript was filed in this court by the Reporter rather than the defendant or his counsel. He recited facts to establish that postconviction counsel did not receive the transcript until November 14, 1988. Postconviction counsel then advised the defendant a pro se motion was not due until December 14, 1988. Postconviction counsel's first action was to file an amended motion on May 26, 1989.

*Luleff v. State*, supra, and *Sanders v. State*, supra, do not deal with the untimely

filing of a defendant's initial motion (whether pro se or by counsel) for postconviction relief. *Sanders v. State* addresses the untimely filing of an amended motion by postconviction counsel and directs:

> "At such time as counsel may seek leave to file pleadings out of time, the motion shall set forth facts, not conclusions, showing justification for untimeliness. Where insufficiently informed, the court is directed to make independent inquiry as to the cause of the untimely filing. The burden shall be on the movant to demonstrate that the untimeliness is not the result of negligence or intentional conduct of the movant, but is due to counsel's failure to comply with Rule 29.-15(f). If the court determines that the *untimeliness resulted from negligence or intentional conduct of movant,* the court shall not permit the filing. Should the failure to file a timely amended motion result from inattention of counsel, the court shall permit the filing." *Sanders v. State,* 807 S.W.2d at 495. (Emphasis added.)

Presumably, that direction should also be followed in respect to a defendant's untimely initial motion for postconviction relief. In this case, the pivotal issue is when was the defendant charged with notice the transcript had been filed. Defendant should not be found negligent if he was not charged with knowledge that the time limit prescribed by Rule 29.15(b) was running. The notice of the filing of the transcript was mailed by the Clerk of this court to trial counsel. There is no suggestion trial counsel took any action other than to mail the record to postconviction counsel on November 10, 1988. If it was trial counsel's or postconviction counsel's duty to timely file an initial motion, counsel in effect abandoned the defendant.

■ Applying the directive of *Sanders v. State,* supra, to this case, the defendant's motion should have set forth facts, not conclusions, showing justification for the untimeliness of his initial motion. In the absence of such information, the motion court should have made independent in-

quiry to determine the cause of the untimeliness.

However, in this case it is not necessary to remand the cause for that purpose. It may be assumed the motion court found justification for such untimeliness. The motion court did accept and consider the defendant's pro se motion and amended motion. It made findings of fact and conclusions of law in response thereto. It determined an evidentiary hearing was not required and entered judgment denying the motion. That judgment may be reviewed in this court.

■ The record demonstrates the testimony the defendant purchased the flexible hose and tape the day he purchased the gun was uncontroverted. The introduction of the flexible hose and tape would have been cumulative. The motion court determined that the allegations concerning trial counsel's decision not to introduce the cumulative evidence was conclusory and within the scope of trial strategy and not ineffective assistance. That determination was not error. *Thomas v. State,* 761 S.W.2d 246 (Mo.App.1988).

By his brief the defendant has abandoned the conclusion alleged in his motion. He now concludes that the allegation of such facts required an evidentiary hearing because the flexible hose and tape would have negated his contemporaneous purchase of the gun as evidence of an intent to kill Long. Even assuming that unpled contention removes the allegation from the ambit of trial strategy, the allegations must support a conclusion counsel's failure resulted in prejudice to the defendant. *Thomas v. State,* supra.

The record shows the defendant shot Long once in the right temple and three times in the chest, penetrating the heart and right lung. In view of the record, the pleaded facts do not support a conclusion there is a reasonable probability the introduction of the flexible hose and tape would have dissuaded the jury from finding defendant knowingly caused the death of Long. The trial court properly denied an evidentiary hearing.

The judgments of defendant's convictions and sentences and denial of his motion under Rule 29.15 are affirmed.

PREWITT and CROW, JJ., concur.