**Jessica Lynn CLARK, Movant–Appellant,**

v.

**STATE of Missouri, Respondent–Respondent.**

**No. 23619.**

Missouri Court of Appeals, Southern District, Division Two.

Sept. 29, 2000.

Motion for Rehearing or Transfer Denied Oct. 19, 2000.

Application for Transfer Denied Dec. 5, 2000.

Mark A. Grothoff, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

PHILLIP R. GARRISON, Judge.

Jessica Lynn Clark ("Movant") contends that the motion court clearly erred in denying her Motion to Vacate, Set Aside or Correct the Judgment or Sentence filed pursuant to Rule 29.15.[1] Movant contended in her motion that trial counsel's failure to offer a lesser included offense instruction on voluntary manslaughter constituted ineffective assistance of counsel which should result in relief from her jury conviction for the class A felony of second degree murder, § 565.021, for which she was sentenced to life in prison. We affirm the motion court's ruling.

Movant rented an apartment in Springfield in the summer of 1995. Shawna Daly ("Victim") began residing in the apartment in December, and by January 1996, several other people were also living there. In fact, sometimes, so many people were staying at Movant's apartment that she had to sleep in the apartment of an acquaintance, Brandy Uber ("Brandy"), who lived across the hall. Movant complained to Brandy that Victim had "ruined" her apartment and did nothing to keep it clean. Eventually, Movant's landlord told her that she either had to get the other occupants of her apartment to leave, or Movant would have to move out. On February 1, 1996, the landlord gave Movant an eviction notice.

On February 2, 1996, Movant was alone in the apartment with Victim, who was asleep on the floor. According to statements made by Movant to investigators, Movant was running bath water when she "had the urge to kill [Victim]." Initially, Movant decided to knock Victim out with a crutch that was in the apartment, and then drown her in the bathtub. Movant proceeded to strike Victim in the head with the crutch about ten times, but stopped when Victim yelled. An interval of "several minutes" elapsed before Movant decided to hit Victim in the head with a candlestick holder, which she did while Victim was sitting on the floor. Blood was coming from Victim's head as a result of the blow with the candlestick holder, but Movant

1. All rule references are to Missouri Rules of Criminal Procedure (2000) and all statutory references are to RSMo 1994, unless otherwise indicated.

decided she would not be able to knock Victim out and picked up an "Ace" type bandage lying on the floor next to Victim. She wrapped the bandage around Victim's neck, tied it, and held it. When she saw another bandage on the floor, she also wrapped it around Victim's throat and held it. According to Movant, Victim struggled for about five minutes and then stopped breathing. Movant dragged Victim's body to the bathroom and placed it in a bathtub full of water. Later, Movant went back into the bathroom and drained the water from the tub, leaving Victim there.

One of the witnesses for the State lived in an apartment beneath the one occupied by Movant. She testified that on the day in question, she started hearing a lot of noise and movement coming from the apartment above her. She also heard a woman say "No. Stop." Music coming from the apartment above her was then turned up, after which she could still hear movement but could not distinguish anything else that was said. After about fifteen minutes, the music was turned off and she heard no further sounds from Movant's apartment.

Later that afternoon, Brandy went to Movant's apartment, and during their conversation Movant told her that she thought she had killed Victim. Movant said that she put her hands around Victim's neck and "couldn't let go." Brandy then saw Victim lying face down in the bathtub and left the apartment. Several other people who were acquainted with Movant saw Victim's body before Brandy called the police. Movant told some of these people that she "snapped," was "sick of the bitch," and that she did not want anyone to call the police. An autopsy disclosed that Victim died of strangulation. She also had deep bruises in the scalp and "defensive" bruises on the arms and wrists.

At trial, Movant called a psychiatrist, Dr. Dorothy Lewis ("Dr. Lewis"), who testified that Movant did not have a mental disease or defect, but that she did believe that at the time of Victim's death, Movant was functioning in an altered or dissociative state. Dr. Lewis gave her opinion that Movant "snapped" as a result of years of repressing her anger about abuse by her parents, about Victim and the other people who lived in the apartment taking advantage of her and leaving the place in a mess, and about the fact that she was being evicted.

In Movant's sole point on this appeal, she contends that the motion court clearly erred in denying her Rule 29.15 motion because her trial counsel was ineffective by failing "to act as a reasonably competent attorney would under the same or similar circumstances by counsel's failure to offer an instruction for the lesser included offense of voluntary manslaughter, thereby prejudicing [Movant] by depriving the jury of a viable option to convict on less than second degree murder."

Review of the denial of a Rule 29.15 motion is limited to a determination of whether the findings and conclusions of the motion court are clearly erroneous. Rule 29.15; *Leisure v. State*, 828 S.W.2d 872, 873–74 (Mo. banc 1992), *cert denied*, 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992). The findings and conclusions of the motion court are clearly erroneous only if, after review of the entire record, the appellate court is left with the definite and firm impression that a mistake has been made. *State v. Vinson*, 800 S.W.2d 444, 448 (Mo. banc 1990); *George v. State*, 973 S.W.2d 114, 115 (Mo.App. S.D.1998).

To prevail on a claim of ineffective assistance of counsel, a movant must show that counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under similar circumstances and that he/she was thereby prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *State v. Kelley*, 953 S.W.2d 73, 91 (Mo.App. S.D.1997), *cert denied*, 522 U.S. 1151, 118 S.Ct. 1173, 140 L.Ed.2d 182 (1998). Prejudice is shown where "there is a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

The motion court, in dismissing Movant's motion without an evidentiary hearing, noted that such a hearing is required only when the motion alleges facts, and not conclusions, warranting relief; where the facts alleged raise matters not refuted by files and records in the case; and when the matters complained of resulted in prejudice to the movant. *See State v. Starks*, 856 S.W.2d 334, 336 (Mo. banc 1993). It should be noted that here, Movant does not contend that the motion court erred in failing to grant an evidentiary hearing on her Rule 29.15 motion. Accordingly, we construe Movant's position to be that she was entitled to relief based on the record submitted to the motion court without the need for additional evidentiary facts.

■ Voluntary manslaughter is committed when a person causes the death of another person under circumstances that would constitute murder in the second degree under § 565.021.1(1), "except that he caused the death under the influence of sudden passion arising from adequate cause." Section 565.023.1(1). " 'Sudden passion' means passion directly caused by and arising out of provocation by the victim or another acting with the victim which passion arises at the time of the offense and is not solely the result of former provocation." Section 565.002(7). " 'Adequate cause' means cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control." Section 565.002(1). The concept of sudden passion arising out of provocation is an objective standard which is not altered by a defendant's mental condition in that the standard is a person of ordinary temperament and an ordinary person's capacity for self-

control. *State v. Werner*, 810 S.W.2d 621, 624 (Mo.App. S.D.1991). As noted by the *Werner* court, the statutes creating the special negative defense of sudden passion are primarily founded in the concept of a reaction to physical violence by the victim. *Id.* Passion may be rage or anger, or terror, but it must be so extreme that for the moment, the action is being directed by passion, not reason. *State v. Fears*, 803 S.W.2d 605, 609 (Mo. banc 1991). Sudden passion is not established when a reasonable person had time to reflect on his actions. *See State v. Luster*, 750 S.W.2d 474, 481 (Mo.App. W.D.1988). To be "adequate" under the voluntary manslaughter standard, provocation must be of a nature calculated to inflame the passions of the ordinary, reasonable, temperate person, and must result from a sudden, unexpected encounter or provocation tending to excite the passion beyond control. *Fears*, 803 S.W.2d at 609.

■ In dismissing Movant's motion, the motion court noted that according to Movant's statements she thought about killing Victim while running bath water, and after contemplating how she would do it, attacked the sleeping Victim with a crutch. She stopped the attack when Victim told her to do so, and did not resume the assault under after several more minutes when she hit Victim with a candleholder. Movant then switched to the use of two "Ace" type bandages that she found in the area. The motion court found that based on the evidence, Movant had opportunities to stop and reflect on her actions, and that there was no evidence that would suggest sudden passion or adequate provocation by Victim. We agree.

Movant attempts to argue that the "adequate cause" here was the "contemptuous mistreatment heaped on [Movant] by [Victim] and her friends." She also characterizes her actions as "sudden passion" because she "snapped." Under the standards discussed above, the evidence did not provide a basis for the submission of a voluntary manslaughter instruction in this

case. Movant had an opportunity to reflect on her actions at lease twice before finally killing Victim. The "adequate cause" argued by Movant, does not meet the standard of being a cause that would reasonably produce a degree of passion in a person of ordinary temperament sufficient to substantially impair an ordinary person's capacity for self-control.

It is not ineffective assistance to fail to request an instruction that is not warranted by the evidence. *See State v. Holcomb*, 956 S.W.2d 286, 294 (Mo.App. W.D.1997). Accordingly, trial counsel was not ineffective in failing to request the voluntary manslaughter instruction that was not supported by the evidence.

The motion court's order dismissing Movant's Rule 29.15 motion was not clearly erroneous and is affirmed.

PREWITT, J., and CROW, J., concur.