

# SUPREME COURT OF MISSOURI
## en banc

CLAYTON DEAN PRICE, )
)
Respondent, )
)
v. ) No. SC93120
)
STATE OF MISSOURI, )
)
Appellant. )

APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY
The Honorable J. Edward Sweeney, Judge

*Opinion issued February 25, 2014*

Clayton Dean Price's motion for post-conviction relief missed the deadline for such a motion under Rule 29.15(b) by more than four years. Price claims that his tardiness should be excused because the counsel he retained to draft and file that motion for him misunderstood the deadlines. The motion court agreed and excused Price's untimely filing. Following a hearing on Price's substantive claims, the motion court granted relief and vacated Price's conviction. The state claims that the motion court erred by proceeding on Price's untimely motion because Price waived all claims for relief when he failed to file his motion within the time allowed by Rule 29.15(b). This Court agrees. Accordingly, the motion court's judgment is reversed and Price's motion is dismissed with prejudice.

## I. Standard of Review

Appellate review of a judgment entered under Rule 29.15 "is limited to a determination of whether the motion court's findings of fact and conclusions of law are clearly erroneous." *Moore v. State*, 328 S.W.3d 700, 702 (Mo. banc 2010). "Findings and conclusions are clearly erroneous if, after a review of the entire record, the court is left with the definite and firm impression that a mistake has been made." *Moss v. State*, 10 S.W.3d 508, 511 (Mo. banc 2000).

## II. Facts

On March 9, 2004, a Taney County jury found Price guilty of first-degree sodomy. Price's trial attorney filed a motion for a new trial but was allowed to withdraw when Price retained a new attorney. At sentencing, with Price's new counsel in attendance, the trial court overruled the new trial motion and sentenced Price to 12 years in prison.

After pronouncing sentence, the trial court advised Price that he was entitled to seek post-conviction relief under Rule 29.15. The court stated that, if he wanted to seek such relief, it was Price's responsibility to complete Criminal Procedure Form No. 40 and file it with the trial court on or before the applicable deadline. The trial court explained further that, if Price did not appeal his conviction, the deadline for filing his post-conviction motion was 180 days after his arrival at the department of corrections. If Price pursued an appeal and was not successful, however, the court explained that the deadline for his motion was 90 days after the appellate court's mandate affirming his conviction. When questioned by the court as to whether he understood these deadlines, Price expressly confirmed that he did.

Price appealed, and his conviction was affirmed. *State v. Price*, 165 S.W.3d 568, 570 (Mo. App. 2005). The court of appeals issued its mandate on July 15, 2005, which meant that the Rule 29.15(b) deadline for Price's post-conviction relief motion was October 13, 2005. Despite the trial court's explanation of the deadlines and Price's confirmation that he understood them, Price did not file his Rule 29.15 motion until December 31, 2009, more than four years after the deadline had passed.

In this motion,[1] Price claimed that his failure to comply with the filing deadline established in Rule 29.15(b) should be excused because he was abandoned by his post-conviction counsel. Price alleged that he hired private counsel to draft and file his Rule 29.15 motion and then relied entirely on that counsel to ensure that a timely motion was filed. In an affidavit submitted in support of Price's motion, Price's counsel states that – despite being present at Price's sentencing and hearing the trial court's instructions to Price regarding the deadlines in Rule 29.15(b) – he believed he had 180 days, not 90, after the appellate court's mandate to draft and file Price's initial post-conviction motion.

---

[1] Price styled his 2009 post-conviction motion as a "Motion to Reopen Rule 29.15 Proceedings and for Permission to File his Original Post-conviction Motion Out of Time." It is not clear why Price titled the motion as one to "re-open" post-conviction proceedings when no prior proceedings had been opened. In *Eastburn v. State*, 400 S.W.3d 770, 774 (Mo. banc 2013), this Court clarified that "this nomenclature [of 're-opening' post-conviction proceedings] does not exist in our rules and should not be used henceforth." Instead, if an inmate has a good faith basis for claiming that an untimely initial post-conviction motion should be allowed to proceed, the inmate should seek leave to file that motion out of time. The motion court then must determine, even where the State does not object to the motion's timeliness, whether there are grounds to excuse the inmate's failure to comply with the filing deadline. *Dorris v. State*, 360 S.W.3d 260, 268 (Mo. banc 2012). As explained below, the circumstances in which an inmate will be allowed to proceed despite an untimely initial motion are rare and demand a clear showing both that the inmate completed his motion and did all that he reasonably could be expected to do to see it timely filed, and that his efforts were frustrated by the active interference of a third party.

3

Counsel claims that he did not discover his error until November 17, 2005, more than four weeks after the deadline for Price's motion. He concludes that "Price relied upon my advice regarding the deadline for filing the 29.15 motion, and relied upon my representation that I would prepare and timely file the motion."

The state moved to dismiss Price's 2009 motion as untimely. Following a hearing on the state's motion, the motion court concluded that the blame for Price's failure to comply with the filing deadline set forth in Rule 29.15(b) rested entirely with Price's counsel and not with Price.

> [There is] no difference between the factual settings and legal principles applied in *Sanders, Luleff* and *McFadden* and the case at bar. Price's attorney actively interfered with Price's ability to file a *pro se* 29.15 motion by assuring Price, directly and indirectly, that he would timely prepare and file the motion on Price's behalf. Price's attorney abandoned this undertaking and, along with it, Price. Price is without fault, and his attorney is solely to blame, for Price's failure to timely file an original 29.15 motion.

Having concluded that Price was abandoned by his post-conviction counsel, the motion court overruled the state's motion to dismiss and granted Price's motion for leave to file his Rule 29.15 motion out of time. On October 26, 2011, following an evidentiary hearing on Price's substantive claims, the motion court found that Price had established grounds for relief and entered judgment vacating his conviction.[2] The state appeals on

---

[2] The trial court's bases for granting Price's substantive claims and vacating his conviction are not relevant to whether his motion was timely filed under Rule 29.15(b) and, if not, whether Price waived his right to proceed under Rule 29.15 and waived all claims that he might have brought had his motion been timely. Accordingly, those bases will not be discussed or evaluated here. Instead, the Court should assume every claim has merit when enforcing the deadlines imposed by Rule 29.15(b). To enforce these deadlines only for meritless claims is not to enforce them at all.

4

the ground that the motion court's decision to proceed on Price's untimely Rule 29.15 motion was clearly erroneous. The court of appeals affirmed. Because this Court granted transfer pursuant to Rule 83.04, jurisdiction over the appeal now lies in this Court, and the judgment of the motion court is reversed. *See* Mo. Const. art. V, § 10.

### III. Analysis

Individuals convicted of state crimes have "no federal constitutional right to a state post-conviction proceeding[.]" *Smith v. State*, 887 S.W.2d 601, 602 (Mo. banc 1994) (citing *Pennsylvania v. Finley,* 481 U.S. 551, 557 (1987)). As a result, the several states have "substantial discretion" to determine what post-conviction procedures (if any) each will provide. *Finley,* 481 U.S. at 559.

In 1988, this Court exercised this discretion by adopting Rule 29.15 as the single, unified procedure for inmates seeking post-conviction relief after trial. *See also* Rule 24.035 (for inmates who plead guilty). The purpose of these rules is to "adjudicate claims concerning the validity of the trial court's jurisdiction and the legality of the conviction or sentence of the defendant …. [while] avoiding delay in the processing of prisoners' claims and preventing the litigation of stale claims." *State ex rel. Nixon v. Daugherty*, 186 S.W.3d 253, 254 (Mo. banc 2006). *See also Thomas v. State*, 808 S.W.2d 364, 366 (Mo. banc 1991) (same).

Though these are laudatory purposes, post-conviction proceedings – by their very nature – come at the expense of the public's substantial interest in preserving the finality of criminal convictions. Accordingly, even though "courts are solicitous of post-conviction claims that present a genuine injustice, that policy must be balanced

5

against the policy of bringing finality to the criminal process." *White v. State*, 939 S.W.2d 887, 893 (Mo. banc 1997). That "balance" is reflected in the requirement that an inmate must initiate his post-conviction proceedings within the specified period or forever waive both the right to such a proceeding and all of the claims that might have been raised in a timely motion. *See* Rule 29.15(b) and Rule 24.035(b).

### A. Filing deadlines for initial motions

When an inmate is convicted after trial, Rule 29.15(b) establishes that inmate's deadline for filing his initial motion for post-conviction relief. Where, as here, the inmate appeals and his conviction is affirmed, the initial post-conviction motion must be filed within 90 days of the appellate court's mandate. The consequences of failing to comply with this deadline are stated unequivocally in the rule: "Failure to file a motion within the time provided by this Rule … shall constitute a ***complete waiver*** of any right to proceed under this Rule … and a ***complete waiver*** of any claim that could be raised in a motion filed pursuant to this Rule." Rule 29.15(b) (emphasis added).

The deadline and "complete waiver" provisions of Rule 29.15(b) are mandatory and constitutional. *Smith*, 887 S.W.2d at 602 (citing *Day v. State,* 770 S.W.2d 692, 695 (Mo. banc 1989)). They play such an important role in the orderly presentation and resolution of post-conviction claims that the state cannot waive them. *Dorris*, 360 S.W.3d at 270 (Mo. banc 2012). Instead, motion courts and appellate courts have a "duty to enforce the mandatory time limits and the resulting complete waiver in the post-conviction rules – even if the State does not raise the issue." *Id.* at 268.

6

Despite these unequivocal provisions and this Court's duty to enforce them, Price contends that his failure to comply with the deadline in Rule 29.l5(b) should be excused and the "complete waivers" under Rule 29.15(b) should not be enforced because the blame for his tardiness properly rests with his counsel and not himself. Though Price seeks the protection of the abandonment doctrine created by this Court in *Sanders v. State*, 807 S.W.2d 493 (Mo. banc 1991), and *Luleff v. State*, 807 S.W.2d 495 (Mo. banc 1991), his reliance on these cases is misplaced. As discussed below, the abandonment doctrine was created to excuse the untimely filing of ***amended motions*** by appointed counsel under Rule 29.15(e). The rationale for this excuse does not apply to untimely ***initial motions,*** and the purposes of Rule 29.15(b) would not be served by extending this doctrine to such circumstances.

### B. Abandonment

As noted above, there is no federal constitutional right to post-conviction proceedings. *Finley,* 481 U.S. at 557. Because the state is not compelled to provide such proceedings, it is not required by the federal constitution to provide counsel to indigent inmates when the state – in its discretion – makes such proceedings available. *Smith*, 887 S.W.2d at 602. Under the predecessor to Rule 29.15, however, this Court decided that appointing counsel for all indigent inmates who assert post-conviction claims was the best way to further the purpose of ensuring thorough review without undue delay in achieving finality of criminal convictions. *Fields v. State*, 572 S.W.2d 477, 483 (Mo. banc 1978) ("Finality is a central aspect of rule 27.26. If a meritorious collateral claim exists, the rule is designed to bring it to the fore promptly and cogently").

Rule 29.15(e) continues this policy and provides that counsel will be appointed for all indigent inmates if, but only after, the inmate timely files his initial motion. The lack of any constitutional right to counsel in post-conviction proceedings, however, precludes claims based on the diligence or competence of post-conviction counsel (appointed or retained), *Reuscher v. State*, 887 S.W.2d 588, 590 (Mo. banc 1994), and such claims are "categorically unreviewable." *Eastburn*, 400 S.W.3d at 774; *State v. Ervin*, 835 S.W.2d 905, 929 (Mo. banc 1992) (same); *Lingar v. State*, 766 S.W.2d 640, 641 (Mo. banc 1989) (same). With two such important policies (i.e., the Court's decision to provide counsel for all indigent inmates and the Court's steadfast refusal to acknowledge claims based on the ineffectiveness of post-conviction counsel), a collision was bound to occur. *Luleff* and *Sanders* mark the Court's resolution of that conflict.

When counsel is appointed under Rule 29.15(e), this rule requires this counsel to investigate the claims raised in the inmate's timely initial motion and then file either an amended motion or a statement explaining why no amended motion is needed. Performance of these duties is essential because the limited scope of appellate review under Rule 29.15(j) assumes that "the motion court and appointed counsel will comply with all provisions of the rule." *Luleff*, 807 S.W.2d at 497-98. Therefore, *Luleff* balances the Court's need to enforce the requirements of Rule 29.15(e) and its unwillingness to allow ineffective assistance claims regarding post-conviction counsel by holding that a "complete absence of performance" by appointed counsel is tantamount to a failure of the motion court to appoint counsel under Rule 29.15(e) in the first instance. *Id.* at 498. Under either scenario, the integrity of the procedures set forth in the rule are

8

compromised and the case cannot proceed as Rule 29.15(e) intends.  *Id.*  Accordingly, *Luleff* holds that the only way to restore the motion court and parties to the position Rule 29.15(e) intends for them is for the motion court to appoint new counsel and allow additional time for this counsel to perform the duties required by Rule 29.15(e).  *Id.* at 497-98.

In *Sanders*, decided the same day as *Luleff*, there was no "complete absence of performance" by appointed counsel.  Instead, appointed counsel decided that an amended motion was necessary to raise all of the inmate's claims properly, but then failed to file the amended motion in a timely manner.  *Sanders*, 807 S.W. at 494-95.  Under this Court's prior cases and the language of the rule, the amended motion should have been dismissed and the inmate allowed to proceed only on the claims raised in his timely initial motion.  *Id.* at 494.  The Court refused to take this approach, however.  Instead, *Sanders* holds that the purposes of Rule 29.15(e) are frustrated as much by appointed counsel's failure to follow through with a timely amendment as by the "complete absence of performance" in *Luleff* .  *Id.*  Rather than have the motion court appoint new counsel as in *Luleff*, however, *Sanders* holds that the motion court need only treat the tardy amendment as timely in order to restore the intended effect of Rule 29.15(e).  *Id.*

Accordingly, the rationale behind the creation of the abandonment doctrine in *Luleff* and *Sanders* was not a newfound willingness to police the performance of post-conviction counsel generally.  Instead, the doctrine was created to further the Court's insistence that Rule 29.15(e) be made to work as intended.  Extensions of this doctrine that do not serve this same rationale must not be indulged.

9

### C.   *Abandonment does not apply to initial motions*

The Court's early decisions regarding the filing deadlines for initial and amended motions are summarized at the outset of *Sanders*:

> Until today this Court has not deviated from its ***firm position*** that failure to timely file a motion constitutes a ***complete bar*** to consideration of a movant's claims, ***even when the claims [for relief from this bar] are attributable entirely to inaction of counsel***. Our courts have traditionally held that postconviction proceedings may not under any circumstances be used to challenge the effectiveness of postconviction counsel.

*Sanders*, 807 S.W.2d at 494 (emphasis added).

As explained above, the abandonment doctrine adopted in *Luleff* and *Sanders* was not a wholesale repudiation of this prior practice. Instead, the Court adopted an exception purposely limited both in its rationale (i.e., to enforce the requirements and ensure the benefits of Rule 29.15(e)) and in its application (i.e., to amended motions filed by appointed counsel).

In the wake of *Luleff* and *Sanders*, however, the court of appeals began reaching inconsistent results on the question of whether abandonment could be invoked as an excuse for an untimely ***initial*** motion. In *State v. Reed,* 816 S.W.2d 919, 924 (Mo. App. 1991), for example, the court refused to excuse the inmate's failure to comply with the deadline for filing initial motions, noting specifically that *Luleff* and *Sanders* were "decided within the context of attorney failure to amend timely filed *pro se* motions … [and] do not alter the mandatory time limitations provided in Rule 29.15." *See also State v. Simms,* 810 S.W.2d 577, 58. (Mo. App. 1991) ("*Luleff* and *Sanders* were decided

10

strictly within the context of amendments to motions already timely filed and do not alter the mandatory time limitations of Rule 29.15(b)”).

On the other hand, in *Werner v. State*, 810 S.W.2d 621, 626 (Mo. App. 1991), the court of appeals determined that when private counsel failed “to timely file an initial motion, counsel in effect abandoned the defendant.” *Id.* at 626. The court concluded, therefore, that the *Luleff/Sanders* procedure for abandonment “should also be followed in respect to a defendant's untimely initial motion for postconviction relief.” *Id.* In a subsequent case, the court relied upon *Werner* to hold:

> Recent cases from our Supreme Court make it abundantly clear that counsel has a legal obligation to ascertain all facts and grounds supporting the movant's post-conviction claim and to take some action on the record. *Luleff v. State,* 807 S.W.2d 495 (Mo. banc 1991), and *Sanders v. State,* 807 S.W.2d 493 (Mo. banc 1991). Before *Luleff* and *Sanders* our courts prohibited review of claims regarding ineffective assistance of post-conviction counsel in a post-conviction proceeding. *Luleff* and *Sanders* ***changed course and provided for a limited inquiry into the issue of pots-conviction counsel's effectiveness in those situations where counsel took no action whatsoever or failed to take timely and appropriate action***.

*Bullard v. State*, Case No. WD45894, (Mo. Ct. App. Aug. 25, 1992) (1992 WL 202542) (emphasis added). This Court took transfer in *Bullard* to resolve this split of authority, and squarely rejected any such extension of *Luleff* and *Sanders*. *Bullard v. State*, 853 S.W.2d 921, 922, 923 n.1 (Mo. banc 1993) (expressly overruling *Werner*).

*Bullard* refuses to apply the abandonment doctrine to excuse an inmate's failure to comply with the deadlines for filing initial motions under Rule 29.15(b) because those deadlines “are not analogous” to the deadlines for filing the amended motions at issue in *Luleff* and *Sanders*. *Bullard,* 853 S.W.2d at 922.

11

An amended motion differs significantly from the original motion. An amended motion is a final pleading, which requires legal expertise. Counsel must be appointed for indigent movants in order to assure its proper drafting. *Rule 29.15(e)*. An original motion, on the other hand, is relatively informal, and need only give notice to the trial court, the appellate court, and the State that movant intends to pursue relief under Rule 29.15. ***As legal assistance is not required in order to file the original motion, the absence of proper legal assistance does not justify an untimely filing***.

*Id.* at 922-23 (emphasis added).

An even more striking difference between the deadlines for initial motions and the deadlines for amended motions is that Rule 29.15(b) expressly states that an inmate's failure to comply with the deadlines for filing an initial motion results in a "complete wavier" of the inmate's right to proceed under Rule 29.15 and a "complete wavier" of all claims that he might have brought there. The deadlines for amended motions in Rule 29.15(g), on the other hand, contain no waiver provisions. A failure to comply with those deadlines does not bar the inmate from proceeding altogether, as under Rule 29.15(b). Instead, the inmate is merely limited to those claims already raised in his timely initial motion. *Stanley v. State*, ___ S.W.3d ___ (Mo. banc 2014) (slip op. at ___).

*Bullard* also refuses to extend the abandonment doctrine to excuse a tardy initial motion on the basis that counsel failed to draft and file the motion on time because such claims are indistinguishable from claims of ineffective assistance of post-conviction counsel, which the Court refuses to allow. *Bullard*, 853 S.W.2d at 922-23. "This Court recognizes the right – created by Rule 29.15 – to assistance of counsel, but only ***after*** a defendant indicates an intent to seek relief under Rule 29.15 by filing the original motion." *Id.* at 923 (emphasis added). Accordingly, *Bullard* holds that "legal assistance

12

is not required in order to file the original motion, [and] the absence of proper legal assistance does not justify an untimely filing." *Id.* at 922-23.

The Court's wariness in *Bullard* of ineffective assistance claims masquerading as abandonment claims is justified. "Claims of abandonment [must be] reviewed carefully to ensure that the true claim is abandonment and not a substitute for an impermissible claim of ineffective assistance of post-conviction counsel." *Taylor v. State*, 254 S.W.3d 856, 858 (Mo. banc 2008). *Bullard* notes that, when properly confined to the filing of amended motions by appointed counsel, the abandonment doctrine survives such scrutiny because it seeks only to enforce Rule 29.15(e), and does not purport to supervise the quality of representation that an inmate receives—but has no constitutional right to receive[3]—during post-conviction proceedings.

This line is crossed, however, when an inmate claims: (1) that his counsel failed to understand properly the deadlines for initial motions under Rule 29.15(b); and (2) that counsel's failure prejudiced the inmate by causing him to waive his right to proceed under Rule 29.15 and to waive all claims that he might have pursued in a timely motion. *Bullard* strips away the mask of "abandonment" from such claims, revealing them to be the ordinary ineffective assistance claims they are. *See Strickland v. Washington,* 466 U.S. 668, 687 (1984) (ineffective assistance claims must allege that the attorney failed to exercise that level of skill and diligence that a reasonably competent attorney would

---

[3] For proceedings in which the criminal defendant has a Sixth Amendment right to counsel, claims of ineffective assistance of counsel (and associated remedies) are appropriate. *Strickland* 466 U.S. at 686-87. Such claims are anathema to post-conviction proceedings, however, where the constitution provides no right to counsel. *Reuscher*, 887 S.W.2d at 590.

exercise in a similar situation and that this failure prejudiced the defendant). For this reason, too, *Bullard* is correct in rejecting all efforts to excuse a tardy initial motion on the basis of counsel's failure to draft and file the inmate's motion on time.

### D.    Bullard *controls this case*

Perhaps recognizing that *Bullard* rejects the very argument he makes, Price seeks to distinguish *Bullard* on the facts. This effort fails, however, because the facts of both cases are the same in all material respects. In both cases, the inmate discharged trial counsel after an adverse jury verdict and retained new counsel for all appellate and post-conviction proceedings. In neither case did the inmate draft his own motion or take any other steps to give timely notice of his intent to seek relief under Rule 29.15. Instead, both inmates retained counsel to fulfill these responsibilities for them and both retained counsel failed to draft and file the inmate's motion on time because they both failed to comprehend the applicable deadline. Finally, both inmates retained substitute counsel to file tardy initial motions and thereby attempt to resurrect rights and claims already waived according to Rule 29.15(b).[4]

Because the facts of Price's case are, in all material respects, indistinguishable from the facts in *Bullard*, there is no basis for this Court to reach a contrary result. *Bullard* properly refuses to extend the abandonment doctrine – created solely to enforce the provisions of Rule 29.15(e) regarding appointed counsel and amended motions – or to

---

[4]   The inmate in *Bullard* did not file his initial motion until 10 months after the deadline, while Price's initial motion missed the deadline by more than four years. The length of the inmate's tardiness is irrelevant, however, because the waiver provisions in Rule 29.15(b) are triggered

14

allow that doctrine to override the deadline provisions of Rule 29.15(b) or ignore its express waiver provisions.  Accordingly, the Court holds here – as it did in *Bullard* – that the abandonment doctrine created in *Sanders* and *Luleff* cannot excuse an inmate's failure to file his initial post-conviction motion on time and will not protect an inmate from the provisions of Rule 29.15(b) that deem any failure to comply with those deadlines to be a "complete waiver" of the inmate's right to proceed under Rule 29.15 and of all claims that the inmate might have raised had he filed a timely initial motion.

### E.     Third-party interference

Even though the abandonment exception created in *Luleff* and *Sanders* cannot excuse an inmate's failure to file a timely initial motion under Rule 29.15(b), this Court has recognized other rare circumstances in which such tardiness may be excused.  Specifically, when an inmate prepares the motion and does all he reasonably can do to ensure that it is timely filed under Rule 29.15(b), any tardiness that results solely from the active interference of a third party beyond the inmate's control may be excused and the waivers imposed by Rule 29.15(b) not enforced.

For example, this Court excused an inmate's untimely initial motion under Rule 29.15(b) where the inmate mailed the motion in time to comply with the applicable deadline but mailed it to the wrong circuit court.  *Nicholson v. State*, 151 S.W.3d 369 (Mo. banc 2004).  There, the Court held that the inmate's motion should be treated as timely because, if the Rule 29.15 motion had been an ordinary civil case, the circuit clerk

---

when the inmate's initial motion is tardy to any degree.  Nothing in the rule suggests that these waivers apply to some tardy filings but not others.

where the motion had been filed would have been bound by Rule 51.10 to transfer the misdirected filing to the proper court. *Id.* at 371 n.1. Though *Nicholson* holds that "Rule 51.10 applies" to proceedings under Rule 29.15, the Court's decision to excuse the inmate's tardy filing was not a mere "mechanical application of statutes and procedural rules[.]" *Id.* at 371 n.1. Instead, the Court's decision was motivated by the practical limitations on an inmate's ability to control all of the circumstances that can affect compliance with Rule 29.15(b). *Id.*

Similarly, this Court has noted that the court of appeals properly excused an inmate's untimely initial motion where – even though the inmate wrote his own motion and mailed it in time to meet the deadline – the filing was tardy because the inmate relied on an outdated address and the sentencing court's postal forwarding order was not renewed and lapsed the day before his motion arrived. *Moore v. State*, 328 S.W.3d 700, 702 (Mo. banc 2010) (citing *Spells v. State,* 213 S.W.3d 700 (Mo. App. 2007)). *Spells*, too, focused on the motivating factor in *Nicholson*, noting that "such 'prisoners cannot take the steps other litigants can take ... to ensure that the court clerk receives and stamps their notices of appeal before the ... deadline.'" *Spells*, 213 S.W.3d at 701-02 (quoting *Houston v. Lack,* 487 U.S. 266, 270–71 (1988)).

The exemption employed in *Nicholson* and *Spells* [5] arises out of the practical reality that an inmate cannot comply with Rule 29.15 without relying on a third party to some extent. As noted above, the initial motion under Rule 29.15(b) requires no legal

16

expertise or assistance and is designed to be an informal filing that can be completed by an inmate acting alone. But Rule 29.15(b) requires that the inmate "***shall file***" this motion in the sentencing court and an inmate, by definition, cannot comply with such a requirement on his own. Instead, inmates – unlike nearly every other category of civil litigants – cannot initiate post-conviction proceedings without relying on the assistance of one or more third parties to take the motion from the inmate and deliver it to the circuit clerk for filing. Accordingly, where an inmate writes his initial post-conviction motion and takes every step he reasonably can within the limitations of his confinement to see that the motion is filed on time, a motion court may excuse the inmate's tardiness when the active interference of a third party beyond the inmate's control frustrates those efforts and renders the inmate's motion untimely.

But this "active interference" exception does not apply in Price's circumstances. He did not do all that he could do to effect a timely filing of his Rule 29.15 motion. Like the inmate in *Bullard* (but unlike the inmates in *Nicholson* and *Spells*), Price did not write his initial post-conviction motion and took no steps to meet (or even calculate) the applicable filing deadline for his motion. Instead, as in *Bullard*, the only action Price took with regard to these responsibilities was to retain counsel to fulfill them on his behalf. Of course, Price is entitled to retain counsel for that purpose, but, by doing so, he took the same risk that every other civil litigant takes when retaining counsel, i.e., he

---

[5] The question of whether *Nicholson* or *Spells* are proper applications of an exception for third-party interference is not before the Court. It is sufficient for present purposes only to note that this is the exception the Court purported to apply.

17

chose to substitute counsel's performance for his own and bound himself to the former as though it were the latter. This rule is as old as – and even older than – this Court:

> The omission of the attorney spoken to in the cause to plead within the time prescribed by law, cannot place the application to set aside the judgment by default upon more favorable grounds than if the omission had been on the part of the defendant himself. ***The attorney is the agent of the party*** employing him, and in the court stands in his stead, and ***any act of the attorney must from necessity be considered as the act of his client***, ***and obligatory on the client***. This principle is so well understood and has been so long acted upon as to render it almost useless to refer to it – a different principle could not be tolerated by the courts without immediately leading to endless confusion and difficulty in the administration of justice.

*Kerby v. Chadwell*, 10 Mo. 392, 393-94 (1847) (emphasis added).

The dissenting opinion argues that a client is not bound by the actions or inactions of counsel if counsel's inaction constitutes abandonment. Leaving aside the circular nature of this argument (not to mention the havoc that such a rule would create when it is applied to attorney failures in all other civil cases, as it surely would have to be), the dissenting opinion's argument is mistaken. There are only two potentially applicable grounds on which a client is not bound by the actions or inactions of his counsel: (1) the client is a defendant in a criminal prosecution and counsel's performance is so deficient that it constitutes a violation of the defendant's constitutional right to effective assistance of counsel; and (2) the client is an indigent inmate who initiates a timely post-conviction proceeding and his court-appointed counsel's failure to fulfill the duties imposed by Rule 29.15(e) is not merely incompetent but tantamount to the motion court having failed to appoint counsel at all. As explained above, neither circumstance is present here. Price

18

has no constitutional right to effective assistance of counsel in his post-conviction proceedings, and Rule 29.15(e) deals only with appointed counsel and amended motions.

The fundamental distinction missing from the dissenting opinion's reasoning is the distinction between breach and remedy. Even though Price's counsel is not a party to this case and has not had an opportunity to defend his actions, the record in this case clearly suggests a gross breach of counsel's duties to Price. Even assuming such a breach, however, the courts were not responsible for this breach and have no obligation to remedy it. The courts are obligated to provide a remedy in the two discrete circumstances enumerated above because: (1) a criminal defendant has a federal constitutional right to effective assistance of counsel and, when counsel's performance fails to meet that minimal standard, the court's duty to uphold that constitution demands that it provide a remedy; and (2) Rule 29.15(e) requires the motion court to appoint counsel to perform certain tasks and, under *Luleff* and *Sanders*, counsel's complete failure to do so leaves everyone (including the appellate courts) in the same practical position as if the motion court had failed to make the appointment at all. Here, the performance of Price's counsel – wholly deficient as it seems to have been – did not violate Price's constitutional rights and was not tantamount to a violation of the motion court's obligations under Rule 29.15(e).

Accordingly, Price cannot benefit from the exception to Rule 29.15(b) recognized in *Nicholson* and *Spells* for circumstances in which a reasonable, good faith effort by the inmate to write and timely file an initial motion under Rule 29.15(b) is frustrated by the active interference of a third party on whom the inmate had to rely but could not control.

19

**F. McFadden *is based on third-party interference, not abandonment***

Recognizing that *Luleff* and *Sanders* only pertain to abandonment in the context of appointed counsel's failure to file timely amended motions, and that *Bullard* plainly refuses to extend this doctrine to excuse untimely initial motions, Price contends that *McFadden v. State*, 256 S.W.3d 103 (Mo. banc 2008), represents a fundamental shift in this Court's view of abandonment and, in effect, expands the doctrine precisely where *Bullard* refuses to go. This Court consistently has rejected the expansive reading of *McFadden* that Price proposes. Instead, viewed in the context of this Court's other Rule 29.15(b) cases, *McFadden* is an application of the active interference exception, not an expansion of the abandonment doctrine beyond the carefully circumscribed environs in *Luleff* and *Sanders*.

As with all of these cases, the facts in *McFadden* are essential to a proper understanding of that decision. There, the inmate wrote his initial post-conviction motion, signed it, had it notarized, and was prepared to mail it to the sentencing court well before the deadline. *McFadden*, 256 S.W.3d at 109. Before he could do so, however, the public defender who had represented the inmate at trial contacted him and expressly directed him to mail his completed, signed, and notarized initial motion to her and ***not*** to the sentencing court. The inmate did as he was instructed and, even though the public defender received the inmate's initial motion two weeks before the Rule 29.15(b) deadline, she failed to file the inmate's motion on time. *Id.*

20

*McFadden* finds that the inmate "did all he could to express an intent to seek relief under Rule 29.15" and would have filed his motion on time but for the active interference of a third party, just as in *Nicholson* and *Spells*. *Id*. at 108, 109.

> The record shows Mr. McFadden timely prepared his motion for post-conviction relief and provided this motion to his counsel well before it was due to the court. Counsel, however, ***actively interfered with the timely filing*** and, despite her receipt of Mr. McFadden's motion for post-conviction relief on September 28, 2006, ***she did not file his motion*** until October 12, 2006, one day after the filing date.

*Id*. On the basis of these "unique circumstances,"[6] the Court held that the inmate was entitled to proceed notwithstanding his tardy filing. *Id.*

The dissenting opinion doubts this reading of *McFadden*, insisting that – contrary to *Bullard* – the Court intended to expand the abandonment doctrine beyond *Luleff* and *Sanders* and use it to excuse the inmate's untimely initial motion. This is incorrect. *McFadden* contains no discussion of *Luleff* or *Sanders* or the circumstances that justified relief in those cases. Instead, it cites only *State ex rel. Nixon v. Jaynes*, 63 S.W.3d 210, 217-18 (Mo. banc 2001), for the proposition that the Court recognizes "a narrow" exception to the requirement that motion courts dismiss untimely motions under Rule 29.15(b) when the inmate is abandoned by counsel. *McFadden*, 256 S.W.3d at 106. *Jaynes* does not support the dissenting opinion's result, however, because it merely suggests – but does not hold – that, when a motion court appoints counsel under Rule 29.15(e) and that counsel has a disqualifying conflict of interest, *Luleff* may justify

---

[6] Cognizant of Justice Holmes' warning that "[g]reat cases, like hard cases, make bad law," *Northern Sec. Co. v. U.S.,* 193 U.S. 197, 400–401 (1904), the Court in *McFadden* warned that

21

appointing new counsel on the theory that the first appointment was tantamount to no appointment at all. *Jaynes*, 63 S.W.3d at 217-18.

The dissenting opinion focuses on the finding in *McFadden* that an attorney-client relationship existed between the inmate and his public defender when she instructed the inmate to mail his motion to her and not to the court. *McFadden*, 256 S.W.3d at 108. But the Court simply was responding to the parties' arguments as they had framed them, i.e., the inmate argued his appeal in terms of "abandonment by post-conviction counsel," and the state responded that he could not have had a "post-conviction counsel" until a post-conviction proceeding had been initiated with a timely initial motion. *Id.* at 106.

Ultimately, the central issue in *McFadden* is **not** the existence of an attorney-client relationship but the fact that, even though it was the inmate's attorney whose active interference caused the inmate's motion to be filed late, the inmate relied on her only to deliver the motion he prepared. This fact – and only this fact – allowed the Court to find that the inmate's untimely filing "did not occur due to a lack of understanding of the rule, out of an ineffective attempt at filing, or as a result of an honest mistake, ***none of which will justify failure to meet the time requirements.***" *Id.* at 109 (emphasis added). This fact – and only this fact – allows *McFadden* to avoid the otherwise controlling effect of *Bullard* because counsel failed the inmate as a courier, not by providing incompetent legal advice or ineffective representation.

> Certainly, the state is correct that *Bullard* held that ineffective assistance of counsel in informing his client when a post-conviction motion is due does

the "opinion is limited to this specific factual scenario where counsel overtly acted and such actions prevented the movant's timely filing." *McFadden*, 256 S.W.3d at 109.

not constitute abandonment. That is not what occurred here, however: the public defender accurately told Mr. McFadden when his motion had to be filed, but she then told him to give it to her for filing and then simply abandoned *that undertaking*. *Bullard,* thus, is not dispositive.

*Id.* at 108 (emphasis added).

The most important aspect of *McFadden* is that, after successfully distinguishing *Bullard*, the Court did **not** turn to the abandonment doctrine from *Luleff* and *Sanders* – or even *Jaynes* – to justify excusing the inmate's untimely filing. Instead, *McFadden* invokes the active interference exception identified in *Nicholson* and *Spells*.

Here, as in *Nicholson* and *Spells,* and unlike in *Bullard,* the record shows that Mr. McFadden timely prepared and mailed his motion—and did so some two weeks prior to the filing deadline. Rather than mail it to the court directly, however, he followed his counsel's express direction, and mailed it to her, **because counsel had affirmatively undertaken to file the motion for him**. She did not do so timely.

*Id.* at 108 (emphasis added). **This** is the operative rationale in *McFadden* and, regardless of the language used by the parties and reflected in parts of the opinion, **this** analysis demonstrates clearly that the Court was not applying (let alone extending) the abandonment doctrine from *Luleff* and *Sanders*.

Despite the arguments advanced in the dissenting opinion, this Court has viewed *McFadden* as an active interference case consistently since it was written. In 2009, the year after *McFadden* was written, the Court characterized the decision this way:

Because Mr. McFadden did all he could to express an intent to seek relief under Rule 29.15, took all steps to secure this review, and was free of responsibility for the failure to comply with the requirements of the rule, this Court found that such **"active interference"** on the part of postconviction counsel constituted abandonment. *Id.*

23

*Gehrke v. State*, 280 S.W.3d 54, 57-58 (Mo. banc 2009).[7]  The following year, the

Court's understanding of *McFadden* as an application of the active interference exception

in the same vein as *Nicholson* and *Spells* was unmistakable:

> The second judicially created exception to [the filing deadlines in] Rule
> 29.15 occurs, "in ***very rare circumstances ... [in which] our courts have
> found an improper filing, caused by circumstances beyond the control of
> the movant, justified a late receipt of the motion by the proper court***."
> *McFadden,* 256 S.W.3d at 108; *see Nicholson,* 151 S.W.3d at 371 (motion
> that was timely filed in the improper venue must be transferred to the
> proper venue as if it were filed there originally); *Spells,* 213 S.W.3d at 701–
> 02 (a motion was timely where the movant sent it to the court's previous
> address and the post office received it before the deadline for filing a Rule
> 29.15 motion).  ***There were no rare circumstances in this case that justify
> Moore's failure to prepare and send the original motion before the
> expiration of 90 days***.

*Moore v. State*, 328 S.W.3d 700, 703 (Mo. banc 2010).

In addition, this is not the first time that the narrow scope of the abandonment

doctrine and the inapplicability of *McFadden* have been used to determine Price's fate.

The court of appeals used both when it denied Price's habeas petition on the basis of his

procedural default and held that Price could not rely on the abandonment doctrine to

overcome that default:

> ***[A]bandonment applies only to amended, not original, PCR motions***.
> Price urges us to ignore that distinction, but we are bound by *Bullard v.
> State,* 853 S.W.2d 921, 922–23 (Mo. banc 1993), which explains why

---

[7]  The dissenting opinions in *Gehrke* argue that abandonment occurs whenever counsel breaches
an ethical duty to an inmate client, *Gehrke,* 280 S.W.3d at 61 (first dissenting opinion), and that
the abandonment doctrine should excuse any failing by counsel that precludes review of the
inmate's claims either in the motion court or on appeal, *id.* at 62 (second dissenting opinion).
Had the Court agreed with the expansive reading of *McFadden* being urged by the dissenting
opinion in the present case, one or both of these arguments would have gained a majority in
*Gehrke*.  An expansive reading of *McFadden* again failed to garner majority support one year
later in *Moore v. State*, 328 S.W.3d at 703-04 (concurring opinion).

24

original and amended petitions are treated differently and overrules prior authority suggesting otherwise. *Id.* at 923 n. 1, *overruling, in part, State v. Werner,* 810 S.W.2d 621, 626 (Mo.App.1991).

> ***Nor is Price aided by McFadden v. State****,* 256 S.W.3d 103 (Mo. banc 2008), which our supreme court "emphasize[d]" was "limited to [its] specific factual scenario" where McFadden's counsel "overtly acted," "***actively interfered****,*" and "prevented" McFadden's timely filing of an original PCR motion that McFadden had prepared. *Id.* at 109. The court carefully confined its holding to those "unique circumstances," and reiterated that PCR counsel's "lack of understanding of the rule" or "honest mistake" will not justify failure to meet time requirements or warrant relief under the abandonment doctrine. *Id.*

*State ex rel. Nixon v. Sheffield*, 272 S.W.3d 277, 283, 283 n.1 (Mo. App. 2008) (emphasis added).

## G.  *Clarifying McFadden*

The deadlines for filing initial motions under Rule 29.15(b) and the scope of any unwritten exceptions to them are important not only to Missouri motion courts and appellate courts, but they play an important role in determining when and how Missouri inmates may seek habeas relief in the federal courts as well.[8] One reason this Court has been unwilling to extend the abandonment doctrine beyond its roots in *Luleff* and *Sanders* is that the Court is unwilling to have any exception to the waiver provisions in Rule 29.15(b) characterized as an available remedy for all inmates seeking federal habeas relief.

---

[8]  The Court here holds that, under Rule 29.15(b), Price's failure to timely file his initial motion resulted in a "complete waiver" of his right to further post-conviction proceedings and a "complete waiver" of all claims he might have pursued in a timely initial motion. As noted above, Price's earlier state habeas petition was denied due to his procedural default under Rule 29.15(b). This Court expresses no view, however, about the proper analysis or disposition of any future claims for habeas relief he may assert in a proper forum.

25

[T]he Court [also] limits the scope of abandonment to preserve potential relief under federal habeas corpus proceedings. Federal habeas corpus proceedings require a movant to exhaust all available state remedies, including appeal and postconviction remedies, before bringing a federal claim. *See Coleman v. Thompson,* 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). State court remedies are exhausted "when they are no longer available, regardless of the reason for their unavailability." *Woodford v. Ngo,* 548 U.S. 81, 92–93, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). If the scope of abandonment were expanded further, it is foreseeable that federal habeas corpus claims could be denied due to a movant's failure to bring a motion to reopen postconviction proceedings. This would frustrate the legitimate goals of a prompt comprehensive review and finality.

*Gehrke*, 280 S.W.3d at 59. Therefore, it is important for Missouri decisions in this area to be as clear, as consistent, and as predictable as possible.[9]

Even though *McFadden* draws the important distinctions explained above, the dissenting opinion in this case correctly notes that language in other parts of the decision fails to maintain those distinctions. No matter how clear *McFadden* is (or is not), what matters is that the decision has led to a proliferation of abandonment claims well beyond

---

[9] A cautionary tale concerning the uncertain proliferation of unwritten exceptions to the deadlines in Rule 29.15(b) occurred in the wake of the court of appeals' decision in *Bullard* and the effect of that later-reversed decision on the inmate in *Smith v. State*, 798 S.W.2d 152 (Mo. banc 1990). In *Smith*, because the prisoner's initial post-conviction motion was untimely, this Court held that the motion court was obligated to dismiss the motion and could not reach the merits of the prisoner's claims. *Id.* at 153. The inmate then sought habeas relief in the federal courts. During the brief period between the court of appeals' decision in *Bullard* expanding the abandonment doctrine and this Court's decision in *Bullard* rejecting such an expansion, the federal district court relied upon the court of appeals' decision and held that the inmate could not proceed with his federal habeas claims until he pursued relief in state court under the newly expanded abandonment remedy. *See Smith v. State*, 887 S.W.2d 601, 602 (Mo. banc 1994). As a result, the inmate's federal remedy was delayed while he was forced to pursue a claim that this Court rejected almost before the inmate could bring it. *Id.* When the inmate later tried to raise abandonment for a third time, this Court dismissed the claim on the same basis that the Court now dismisses Price's motion: "*[A]bandonment by an attorney does not excuse the untimely filing of an original post-conviction motion*." *Smith v. State*, 21 S.W.3d 830 831 (Mo. banc 2000) (emphasis added).

26

its intended scope and, as a result, created unnecessary uncertainty regarding the effect of the waiver provisions in Rule 29.15(b). Accordingly, the Court holds that *McFadden* **did not** alter or restrict the holding in *Bullard* (i.e., that the abandonment doctrine created in *Luleff* and *Sanders* is limited to appointed counsel and the timeliness of amended motions under Rule 29.15(e) and (g)) and, therefore, that abandonment **cannot** excuse the tardiness of an initial motion under Rule 29.15(b). Instead, *McFadden* – like *Nicholson* and *Spells* – stands only for the proposition that, where an inmate prepares his initial motion and does all that he reasonably can to ensure that it is filed on time, tardiness resulting solely from the active interference of a third party beyond the inmate's control may be excused and the waiver imposed by Rule 29.15(b) not enforced. To the extent *McFadden* suggests otherwise, it no longer should be followed.

## IV.    Conclusion

For the reasons set forth above, this Court reverses the judgment of the motion court and, pursuant to Rule 84.14, enters judgment for the state dismissing Price's motion with prejudice.

_____
Paul C. Wilson, Judge

Russell, C.J., Breckenridge and Fischer, JJ., concur;
Stith, J., dissents in separate opinion filed; Draper and
Teitelman, JJ., concur in opinion of Stith, J.

27



# SUPREME COURT OF MISSOURI
## en banc

CLAYTON DEAN PRICE,          )
                                )
                 Respondent,  )
                                )
        v.                  )       No. SC93120
                                )
STATE OF MISSOURI,         )
                                )
                 Appellant.   )

## DISSENTING OPINION

I disagree with the principal opinion's suggestion that Mr. Price's claim is not properly one of abandonment. It *is* a claim of abandonment as this Court previously has defined that term, and *McFadden v. State*, 256 S.W.3d 103 (Mo. banc 2008), is right on point. As in *McFadden,* counsel below overtly undertook to prepare and file Mr. Price's Rule 29.15 motion, and then just failed to do so prior to the deadline. The principal opinion would treat this as merely another example of third-party interference. While it may be that, it is far more too. No one suggests that Mr. Price would have relied on some non-lawyer third party to prepare and file his *pro se* motion. Such reliance would have been unreasonable. Instead, he relied on counsel precisely because the matter was undertaken by counsel in his role as counsel. Counsel is not just a random third party, and the principal opinion errs in treating this case as if that were all it involves.

The real issue is whether the abandonment doctrine as recognized in *McFadden* extends to these facts and provides a basis to reach the merits of Mr. Price's claims in light of the overt undertaking by his counsel to both prepare and file the Rule 29.15 motion. Should this be treated as abandonment, as in *McFadden*, or should it be treated as a matter of ineffective assistance that, for the reasons set out in *Bullard v. State, 853 S.W.2d 921, 922-23 (Mo. banc 1993)*, does not provide a basis for relief?

The principal opinion holds that until the *pro se* motion is filed, Rules 24.035 and 29.15 do not impose a duty on counsel to do anything, and, as a result, counsel had no duty he could have abandoned. It would limit the abandonment doctrine to the filing of the amended motion. The problem with this position is that it is precisely the argument that was explicitly rejected by *McFadden*, and it is inconsistent with this Court's rules of ethics.

In *McFadden*, defense counsel did not wait until the defendant had filed his *pro se* motion before she began acting as counsel. Instead, she told her client to give her the *pro se* motion and that she would file it. The defendant relied on this undertaking and gave counsel the *pro se* motion. He did so not because he mistakenly thought his counsel was a courier service or a courthouse or a prison mailroom – the types of third parties whose interference previously has been found to warrant exceptions to the filing deadline[1] – but solely because she was counsel. But, counsel then failed to file the motion.

---

[1] *See, e.g., Carter v. State, 181 S.W.3d 78, 79-80 (Mo. banc 2006); Nicholson v. State, 151 S.W.3d 369, 370-71 (Mo. banc 2004); Spells v. State, 213 S.W.3d 700, 701-02 (Mo. App. 2007).*

As a result, as in this case, the *McFadden* court was faced with the difficult question of whether to treat counsel's actions as abandonment or as ineffective assistance. The facts of *McFadden* set out above shared characteristics of both the ineffective assistance case of *Bullard* and the abandonment cases of *Luleff v. State, 807 S.W.2d 495 (Mo. banc 1991)*, and *Sanders v. State, 807 S.W.2d 493 (Mo. banc 1991)*. The Court had to decide whether it should treat counsel's failed undertaking merely as ineffective assistance of counsel that was not cognizable when it occurred in a post-conviction context prior to the amended motion, as in *Bullard*. Perhaps, for like in *Bullard*, the defendant had not yet filed his *pro se* motion so that counsel's duty under Rule 29.15(e) to represent the defendant and file his amended post-conviction motion did not yet exist.

But counsel in fact had begun functioning as post-conviction counsel for Mr. McFadden. The *McFadden* court had to decide whether this should make a difference. Should it recognize that counsel's role as post-conviction counsel had begun and analyze whether counsel's conduct in undertaking to file the *pro se* motion but then failing to do so constituted abandonment?

*McFadden* chose to treat the matter as one of abandonment. In setting out the issue before it, the Court stated, "Mr. McFadden failed to timely file his Rule 29.15 motion; therefore, dismissal of his case is required unless he falls within the abandonment exception." *McFadden, 256 S.W.3d at 106*. Nearly half the remainder of the opinion is set out under the heading "Abandonment." The Court therefore rejected the State's argument that counsel merely was ineffective. It stated that, unlike in *Bullard*, defense

3

counsel told Mr. McFadden "to give [the motion] to her for filing and then simply abandoned that undertaking. *Bullard,* thus, is not dispositive." *Id. at 108*. The Court went on to conclude that Mr. McFadden was abandoned, stating, "Mr. McFadden, having been abandoned by counsel who undertook to perform a necessary filing and then simply failed to do so … is entitled to relief …. Such active interference, as demonstrated here, constitutes abandonment." *Id. at 109*.

So, why then did *McFadden* discuss prior cases that had relied on the third-party interference exception when that was not the basis of the decision, and why did it refer to "active interference?" It did so precisely because counsel's conduct in *McFadden* was conduct *by counsel*, but it occurred prior to the time the *pro se* motion was filed. This differentiated this case both from prior abandonment cases and from prior ineffective assistance cases. And, while the timing (prior to filing the *pro se* motion) aligned with the third-party interference cases, the analysis in such cases normally looks at whether it was reasonable for the defendant to rely on a courier, or the listed address for a courthouse, or the prison mail room to complete the filing of his *pro se* motion; in such cases, counsel simply is not involved.

Yet in *McFadden*, counsel was hired and was functioning as post-conviction counsel. The rationale of these earlier cases therefore had relevance but could not be dispositive, for they dealt with the conduct of non-attorney third parties. In *McFadden*, it was counsel in her role as counsel who overtly undertook to act for the client and then failed to do so. For this reason, *McFadden* specifically distinguished the case before it from *Bullard,* where counsel merely had advised his client incorrectly about the law. *Id.*

4

*at 108-09.* At the point that counsel overtly undertook to act for him, this Court said, Mr. McFadden had a right to rely on counsel to perform the duty she had undertaken to file the *pro se* motion, for: "The public defender undertook to represent Mr. McFadden when she provided legal advice and directed him to provide the motion directly to her for filing. Mr. McFadden reasonably relied upon these instructions." *Id. at 107.* The defendant's conduct was reasonable precisely because it was counsel who had undertaken this duty, a duty that was counsel's solely because she was his counsel.

In other words, normally, as the principal opinion notes, prior to the filing of the *pro se* motion, only the third-party interference exception applies, and the issue is whether the defendant did all he reasonably could before relying on a third party. But where, as in *McFadden*, the third party is an attorney, the calculus of what is reasonable is different. This Court might or might not find it reasonable to give a completed *pro se* motion to a family member, or a prison guard, or another unrelated person to file, for such people would have no duty to make such a filing for the prisoner. But this analysis is different when applied to counsel. *McFadden* said it is entirely reasonable to give the completed motion to counsel to file when counsel, in his or her role as counsel, says to do so. A reasonable defendant need not second-guess his attorney and refuse to give her the *pro se* motion for filing.

The instant case is more like *McFadden* than it is like *Bullard.* Counsel began acting as post-conviction counsel before he was required to file an amended motion. As in *McFadden*, he overtly undertook to file the *pro se* motion for his client but then failed to do so. This is a key distinction from *Bullard,* in which counsel merely gave bad advice

5

and did not undertake to perform any act for the defendant. In distinguishing *Bullard,* *McFadden* held that giving bad advice may be ineffective, but failing to file a prepared *pro se* motion constitutes abandonment, stating:

> Certainly, the state is correct that *Bullard* held that ineffective assistance of counsel in informing his client when a post-conviction motion is due does not constitute abandonment. That is not what occurred here, however: the public defender accurately told Mr. McFadden when his motion had to be filed, but she then told him to give it to her for filing and then simply abandoned that undertaking. *Bullard*, thus, is not dispositive.

*Id. at 108.*

But this case also differs from *McFadden* in that the defendant did not have a ready-to-file motion to give his counsel, as had Mr. McFadden. He did not have such a motion ready because counsel began his undertaking earlier in this case than had counsel in *McFadden,* so early that Mr. Price had not yet drafted a *pro se* motion.

And that, I believe, brings us to the real question that this Court should resolve in this case. It should not revisit or limit *McFadden,* which was well-reasoned and which has stood up to subsequent examination. At least three cases from this Court, and others from the lower courts, have relied on *McFadden* for the meaning of abandonment.[2] To

---

[2] See, for example, *Eastburn v. State, 400 S.W.3d 770, 774 (Mo. banc 2013)*, decided by this Court just last June. *Eastburn* reaffirmed that "Abandonment also may occur when the overt action of post-conviction counsel prevents the movant from filing a timely original motion." This Court previously made the same acknowledgment in *Gehrke v. State, 280 S.W.3d 54, 57 (Mo. banc 2009)*, stating, "Recently, this Court recognized an additional circumstance in which a movant may be abandoned. In *McFadden v. State*, this Court held that where post[-]conviction counsel overtly acts in a way that prevents the movant's timely filing of a post[-]conviction motion, a movant is entitled to relief." *Gehrke* engaged in a lengthy discussion of the abandonment exception as developed in *McFadden* and prior cases and refused to extend it to the failure to file a notice of appeal. *Id. at 57-59.* Finally, *Moore v. State, 328 S.W.3d 700, 702 (Mo. banc 2010)*, noted the

change that definition now will only create further confusion.

The question answered by this Court instead should be whether it was reasonable for Mr. Price to rely on counsel to actually prepare, and not just to file, the initial motion, given the fact that our rules say a movant is to prepare and file the *pro se* motion, and only then will counsel be appointed to file an amended motion. Should the deciding fact be the existence of a ready-to-file motion? Or should the deciding fact be that, as in *McFadden*, counsel undertook his post-conviction role earlier than necessary, and, at that point, it was reasonable for the defendant to rely on his counsel's overt undertaking?

This is a serious question. The principal opinion would say that while the defendant had a right to rely on counsel, he also was stuck with counsel's deficiencies. In other words, it would treat this as a matter of ineffective assistance of post-conviction counsel, about which a defendant cannot complain. But this begs the question, for under that analysis, the defendants in *Luleff* and *Sanders* also would have been considered merely the victims of ineffective assistance. They were not, because counsel in those cases, having assumed the role of counsel, later abandoned it. "[A] client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him." *Maples v. Thomas, 132 S. Ct. 912, 924 (2012).* This makes the principal opinion's reliance on a 167-year-old case, *Kerby v.*

---

two traditional forms of abandonment and then said "A third type of abandonment occurs when post-conviction counsel's overt actions prevent the movant from filing the original motion timely. See *McFadden,* 256 S.W.3d at 109 (post-conviction counsel, despite promising to file movant's pro se motion, failed to do so timely)."

7

*Chadwell*, *10 Mo. 392, 393-94 (1847)*, inapposite.[3]  Being abandoned by counsel is like having no counsel, not like having ineffective counsel.  In such situations, the courts normally appoint new counsel for the defendant and let him begin the post-conviction process again.

That should be the case here, too.  I would hold that for the reasons set out in *McFadden*, if a defendant is represented by counsel for purposes of filing a post-conviction motion and counsel undertakes to file the motion for the client but does not do so, then the client has been abandoned.  Like *McFadden*, I would say "this opinion is limited to this specific factual scenario where counsel overtly acted and such actions prevented the movant's timely filing."  *256 S.W.3d at 109.*  I would explain that *McFadden's* analysis therefore applies to all cases in which post-conviction counsel overtly acted to prevent the client from filing the *pro se* motion, whether or not the overt act occurred before or after the client had drafted the *pro se* motion.  I see no basis in principle to distinguish the two situations.

I would not hold, as does the principal opinion, that even though a defendant is represented by counsel, he has no right to rely on that counsel to perform an overt undertaking.[4]  Certainly, the principal opinion's analysis presents a bright-line rule that

---

[3] *Kerby* dealt with whether a client is bound by his counsel's failings; where the client has been abandoned, however, the client effectively is without counsel.  Indeed, that is the most basic rationale of this exception.  *Kerby* is not on point.

[4] In fact, this Court's ethical rules impose an obligation on counsel to diligently represent his or her client.  Rule 4-1.3 provides that "A lawyer shall act with reasonable diligence and promptness in representing a client."  Rule 4-1.2 allows a lawyer to define the scope of representation of a client.  Rule 4-1.4 requires a lawyer to keep the client reasonably informed and to explain a matter to the extent reasonably necessary to permit the client to

8

will be easy to apply – even if represented, nothing counsel does as counsel prior to the preparation by defendant of the *pro se* motion can constitute abandonment. But I do not think that ease of application should outweigh what is, in fact, still abandonment.

Why does this matter? It matters because it makes the difference in whether this Court or any court considers the merits of Mr. Price's post-conviction motion. And, unlike so many post-conviction motions, here the motion court found the motion meritorious. It found serious instances of inadequacy of counsel at trial, which were sufficient to undermine its confidence in the verdict. Indeed, it devotes 22 pages of its 51-page judgment to detailing some 10 aspects of trial counsel's deficient performance, including the failure to object to instructions not requiring the jury to be unanimous and the failure to call an expert witness. The latter ground alone so concerned the motion court that it said: "The court would vacate the conviction … without reference to errors discussed elsewhere in these findings and conclusions."

The principal opinion never reaches the motion court's determination that Mr. Price would not have been convicted but for counsel's errors because it erroneously finds this was not a matter of abandonment. True, under *Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012)*, a federal court is likely to look at the merits of the motion because the

make informed decisions regarding representation, particularly about "significant developments affecting the timing or substance of the representation." *Rule 4-1.4 & Comment 1; see also Moore v. State, 328 S.W.3d 700, 704-05 (Mo. banc 2010) (Stith, J., concurring)* (discussing misleading client about filing notice of appeal as ethical violation). Ironically, this may mean that misleading statements made after representation has begun but before the amended motion is due for filing can form the basis for disciplinary sanctions even though under the principal opinion the client had no right to rely on counsel's undertaking.

Missouri courts have denied relief from errors caused by ineffective assistance.[5]  But, for the reasons discussed above, I believe this Court can and should reach the merits, and should affirm the motion court's grant of a new trial.  I therefore dissent.

$$\overline{\phantom{xxxxxxxxxxxxxxx}}$$

**LAURA DENVIR STITH, JUDGE**

---

[5]As the principal opinion notes, Missouri cases long have held that there is no constitutional right to effective assistance of post-conviction counsel.  In *Martinez,* the United States Supreme Court expressly reserved the question previously also reserved in *Coleman v. Thompson, 501 U.S. 722, 755 (1991)*, whether there is a federal constitutional right to effective assistance of counsel in "collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." *Martinez, 132 S. Ct. at 1315*. The Court found no need to reach the issue in light of its determination that such ineffective assistance may provide cause for a prisoner's procedural default for federal habeas corpus purposes. *Id.*