

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| JULIE MAE KIRK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | WD81958 |
| | ) | |
| | ) | Opinion filed: |
| | ) | |
| | ) | December 17, 2019 |
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF LAFAYETTE COUNTY, MISSOURI
THE HONORABLE DENNIS A. ROLF, JUDGE**

Before Division Two:  Thomas H. Newton, Presiding Judge,
Anthony Rex Gabbert, Judge, and Tom N. Chapman, Judge

Julie Kirk appeals from the judgment of the circuit court which dismissed her *pro se* Rule

24.035 motion for postconviction relief as untimely filed.  We reverse.

## Background

In May 2017, Kirk pleaded guilty to the class C felony of possession of a controlled

substance, two counts of the class C felony of first-degree endangering the welfare of a child, and

the class A misdemeanor of unlawful use of drug paraphernalia.  The trial court found Kirk to be

a prior drug offender and a prior and persistent offender and sentenced her to seven years'

imprisonment on each of the felonies and 90 days in jail on the misdemeanor, with the sentences

ordered to run concurrently.

Kirk was delivered to the custody of the Department of Corrections (DOC) on June 22, 2017. Under the version of Rule 24.035(b) which became effective on July 1, 2017, Kirk's postconviction relief motion was due within 180 days of the date she was delivered to the DOC's custody, or by December 19, 2017. The rule specified that a motion sent to the court by United States mail would be deemed filed as of the date the motion was "deposited in the mail."

The circuit clerk stamped Kirk's *pro se* Rule 24.035 motion as received on December 21, 2017 – two days after the deadline. The circuit court appointed counsel to represent Kirk. Before counsel could file an amended postconviction relief motion, the State filed a motion to dismiss on the basis that Kirk's *pro se* motion was untimely.

The circuit court held an evidentiary hearing on the State's motion to dismiss on March 19, 2018. At the outset, the State argued to the circuit court that Kirk's testimony, standing alone, would not be sufficient to show when her motion was mailed:

> There has to be evidence of when it went into the mail. And if all we have is the Defendant's testimony, then I don't know that that is something that we can rely on. I mean, it's in her best interest to say that it was mailed prior to the date where it would be untimely filed.

The State argued that, although Kirk's motion was file-stamped on December 21, "[i]t could have been mailed the day before. It could have been mailed on the 20th, which is still untimely filed."

Kirk testified that she was incarcerated at the Chillicothe Correctional Center. She said that she put her *pro se* motion in the prison mail system on December 4, 2017, the date on which her *in forma pauperis* affidavit was notarized. Kirk testified that she placed the motion in her housing unit's outgoing mailbox, which is picked up once a day. Once the motion was placed in the prison mailbox, Kirk testified that "it's in the Department of Corrections' hands. I don't have nothing to do with it."

Kirk also presented the testimony of the Lafayette County Circuit Clerk, Deana Aversman. Aversman testified that mail is not delivered directly to the Lafayette County courthouse in Lexington. Instead, Aversman testified that she picks up the mail from the post office every day between 8:00 and 8:30 a.m. Once a filing is picked up from the post office, it is file stamped on the day she picks it up. If mail arrives at the post office after 8:30 a.m., it would be picked up the next day. Because of when she picks up the mail, Aversman agreed that, "if [Kirk's *pro se* motion] had arrived at the post office at 8:30 the day before, it wouldn't get picked up[, and therefore would not get file-stamped,] until the next day."

Aversman testified that the clerk's office had not retained the envelope in which Kirk mailed her *pro se* motion to the court. She acknowledged in her testimony that since July 2017, "we have this new rule [Rule 24.035(c)] where we are supposed to be file stamping the envelopes as well" as the motions themselves. Aversman testified that she became alerted to the requirements of the new rule by Kirk's appointed counsel, which would have occurred after counsel was appointed on December 21, 2017 – more than six months after the new rule went into effect. Aversman testified that, after being informed of the rule's requirements by Kirk's counsel, she "did a little research and discovered that we got a deployment last July, which is a methodology in letting clerks know when there is changes in procedure. So we got that last July." Aversman testified that, as a result of this case, "I have made sure that my staff is well aware of that rule."

The circuit court noted at the hearing that Kirk had not signed her motion for postconviction relief (although she *had* executed an *in forma pauperis* affidavit included in the motion). Kirk's counsel offered to have Kirk sign the motion in the courtroom. Instead, she sent an executed version of her motion to the court following the hearing; it was file-stamped by the clerk's office

3

on March 27, 2018, eight days after the March 19 hearing at which the circuit court had noted the deficiency.

Following the hearing, the motion court granted the State's motion to dismiss by docket entry. Kirk filed a motion to reconsider. Among other things, Kirk's reconsideration motion presented new evidence that a postage calculator on the United States Postal Service website showed that a letter mailed from Chillicothe to Lexington was expected to take two days for delivery.

The motion court entered its judgment dismissing Kirk's *pro se* motion on June 21, 2018. The circuit court's judgment concludes:

> Movant's *pro se* motion was file-stamped December 21, 2017. Movant's pro se motion was not signed, but even if deemed to have been promptly corrected, the motion did not allege facts establishing the motion was timely filed. Movant's motion did not allege "active third-party interference", nor did the March 19 hearing prove the allegations of timeliness that were not in the *pro se* motion. Any showing that the *pro se* motion was completed timely, without more, does not tend to prove when the motion was "dispatched" to the Circuit Court, "much less when the court received it." *Wadel v. State*, WD79502 (Mo. App. W.D. 2017).[1]

This appeal by Kirk followed.

**Standard of Review**

Appellate review of a motion court's dismissal of a postconviction relief motion is limited to determining whether the findings and conclusion are clearly erroneous. *Propst v. State*, 535 S.W.3d 733, 735 (Mo. banc 2017). A motion court's findings and conclusions are clearly erroneous if the appellate court is left with a definite and firm impression that a mistake has been made after a review of the entire record. *Id.*

---

[1] *Wadel v. State*, 524 S.W.3d 575, 577 (Mo. App. W.D. 2017), was decided under a prior version of Rule 24.035(b), under which a post-conviction motion was deemed filed only when physically received by the circuit court. As explained below, Rule 24.035(b) was subsequently changed to adopt the "mailbox rule"; the date of a *pro se* motion's receipt by the court is no longer controlling.

**Discussion**

When an inmate is convicted after a guilty plea, Rule 24.035(b) establishes the deadline for filing an initial motion for postconviction relief. *Price v. State*, 422 S.W.3d 292, 296 (Mo. banc 2014) (discussing Rule 29.15). At the time Kirk's motion was due in December 2017, Rule 24.035(b) required an inmate who had not appealed her judgment or sentence to file her motion "within 180 days of the date the person is delivered to the custody of the department of corrections." Rule 24.035(b) (effective July 1, 2017). The rule also contained a new "mailbox rule":

> If the motion is sent to the sentencing court by first-class United States Mail and is addressed correctly with sufficient postage and deposited in the mail on or before the last day for filing the motion, the motion shall be deemed to be filed timely.

*Id.*

In order to implement this new "mailbox rule," the new version of Rule 24.035(b) established a presumptive method for proving when a *pro se* motion had been filed: it stated that "[a] legible postmark affixed by the United States Postal Service shall be prima facie evidence of the date of the filing of the motion." *Id.* The new rule also added a provision requiring that the circuit court clerk preserve the envelope in which a *pro se* motion was mailed: "[t]he clerk shall file stamp the motion on the date it is received *and retain in the court file the envelope in which the motion was sent*." Rule 24.035(c) (emphasis added).

The obvious reason to require the clerk to retain the envelope is that the envelope would contain the postmark that would presumptively establish the date on which a *pro se* motion was mailed, and therefore the date on which the motion would be deemed filed. By definition, there is only one copy of the postmarked envelope, and only the clerk would have it. Thus, the revised Rule 24.035(c) required the clerk to retain a unique, non-reproducible piece of evidence, which

5

would be essential to establishing whether a *pro se* motion had been timely filed.[2]

Unfortunately, in this case the circuit clerk failed to fulfill the duty imposed upon her by Rule 24.035(c). Although the revised Rule had been in effect since July 1, 2017, and the clerk had received a "deployment" intended to advise her of the rule change, the clerk testified that she only became aware of the rule change six months later, when Kirk's counsel asked her for the envelope in which Kirk had mailed her motion. At *that* point, the clerk realized that her staff had not been trained concerning the new rule; she testified that as a result of this case, "I have made sure that my staff is well aware of that rule."

Missouri statutes state that a clerk's failure to preserve the records required to be maintained by Supreme Court rule shall be treated as a misdemeanor, and that the circuit court has a "special duty" to insure that the clerk is maintaining required records. Section 483.140, RSMo provides:

> It shall be the special duty of every judge of a court of record to examine into and superintend the manner in which the rolls and records of the court are made up and kept; to prescribe orders that will procure uniformity, regularity and accuracy in the transaction of the business of the court; to require that the records and files be properly maintained and entries be made at the proper times as required by law or supreme court rule, and that the duties of the clerks be performed according to law and supreme court rule; and if any clerk fail to comply with the law, the court shall proceed against him as for a misdemeanor. The provisions of this section shall not be construed to permit the adoption of any local court rule that grants a judge the discretion to remove or direct the removal of any pleading, file, or communication from a court file or record without the agreement of all parties.

We recognize that Kirk bore the burden of proving that she had timely filed her *pro se* motion. *See*, *e.g.*, *Fields v. State*, 541 S.W.3d 45, 48 (Mo. App. W.D. 2018) (citing *Dorris v. State*,

---

[2] An inmate could potentially argue that his or her *pro se* motion should be deemed filed *before* the postmark date, on the date when the inmate gave his or her motion to prison authorities for mailing. The United States Supreme Court adopted an analogous rule when interpreting the Federal Rules of Civil Procedure in *Houston v. Lack*, 487 U.S. 266, 273-75 (1988). Given our disposition, we need not decide in this case the precise time at which an inmate's *pro se* motion is considered to have been "deposited in the mail" within the meaning of Rule 24.035(b).

360 S.W.3d 260 (Mo. banc 2012)). However, while the burden was on Kirk to prove the timeliness of her motion, she was denied a critical piece of evidence essential to proving the date on which her motion was mailed, when the circuit clerk failed to fulfill her mandatory duty to preserve the envelope in which Kirk's motion was mailed.

The question whether Kirk had mailed her motion on or before December 19, 2017 was an exceedingly close one. According to the clerk's testimony, Kirk's motion must have been received in the Lexington post office at some time between 8:30 a.m. on December 20, 2017, and 8:30 a.m. on December 21, 2017. Kirk's motion would *only* be untimely if it was mailed on December 20, 2017, rather than on or before December 19. Given the Postal Service's own estimates of delivery times, and the fact that Kirk's motion was mailed during the height of the Christmas season, the more likely scenario is that Kirk's motion was mailed on or before December 19.

In these circumstances – where critical evidence has been destroyed without fault on the part of the movant, by court personnel who have violated their mandatory obligations under the Supreme Court Rules; and where that evidence would be essential to a movant's ability to prove a closely contested factual issue – we conclude that the only appropriate outcome is to treat Kirk's *pro se* motion as timely. No prior Missouri decision has addressed the consequences of the clerk's failure to preserve the record as required by Rule 24.035(c). The Supreme Court has, however, recognized that the untimeliness of a postconviction relief motion will be excused where the untimeliness results from "the active interference of a third party beyond the inmate's control." *Price*, 422 S.W.3d at 301. The active interference exemption "arises out of the practical reality that an inmate cannot comply with [the postconviction relief rules] without relying on a third party to some extent." *Id.* at 302. The Supreme Court has applied this "active interference" principles where the actions of the court, or the clerk's office of the court, have prevented the timely filing.

7

*Id.* at 301-02 (discussing *Nicholson v. State*, 151 S.W.3d 369, 371 & n.1 (Mo. banc 2004), *Moore v. State*, 328 S.W.3d 700, 702 (Mo. banc 2010), and *Spells v. State*, 213 S.W.3d 700 (Mo. App. W.D. 2007)).

The situation in this case is closely analogous to the "active interference" cases. In the "active interference" cases, the actions of court personnel or other third parties have prevented a movant from *making* a timely filing. Here, the actions of the clerk in violation of Rule 24.035(c) have prevented Kirk from *proving* the timeliness of her filing. As in the "active interference" context, Rule 24.035(c) recognizes that inmates relying on the "mailbox rule" cannot prove the timeliness of their postconviction relief motions without assistance of circuit court clerks, who possess a piece of uniquely probative evidence establishing when a postconviction relief motion was filed: the envelope in which the motion was mailed. Where the clerk fails to comply with his or her obligations, this frustrates the inmate's ability to prove the timeliness of his or her filing, through no fault of the inmate's. The only available remedy – particularly where the purported untimeliness is as limited as in this case – is to deem the motion timely.

We find support for this outcome in another analogous area: where court personnel are unable to provide an appellant with a complete transcript of proceedings in the circuit court, and the lack of a transcript prejudices the appellant's ability to litigate claims of error on appeal. In this context, the appellate courts have consistently held that, if the appellant has exercised due diligence to attempt to secure a complete transcript, but such a transcript is not available through no fault of the appellant's, and the appellant is thereby prejudiced, then a new trial will be ordered. *See*, *e.g.*, *S.H. v. P.B.*, No. ED107618, 2019 WL 4420520, at \*2 (Mo. App. E.D. Sept. 17, 2019); *Boehm v. Allen*, 524 S.W.3d 542, 545 (Mo. App. W.D. 2017); *In the Int. of J.M.H.*, 518 S.W.3d 256, 258 (Mo. App. S.D. 2017); *Carroll v. State*, 461 S.W.3d 43, 49 n.6 (Mo. App. E.D. 2015).

Like in the "missing transcript" cases, here the clerk's office has failed to maintain a complete record of the proceedings on Kirk's motion for postconviction relief. There is no suggestion that Kirk is responsible for the missing envelope. Moreover, the postmark on the envelope cannot be remedied or reconstructed through other means. And the absence of the envelope and its postmark plainly prejudiced Kirk – particularly in a case like this one where the timing issues are so close.[3]

The State argues that we should analyze the circumstances of this case under the "spoliation" doctrine, and that we should deny Kirk relief because there is no evidence that the circuit clerk acted maliciously or in bad faith. We disagree. Neither the "active interference" cases, nor the "missing transcript" cases, require that we find that court personnel acted intentionally or in bad faith to defeat a litigant's rights. Instead, the relevant questions are the litigant's lack of culpability and the degree of prejudice suffered by the litigant. This case is fundamentally different from a case of spoliation of evidence by another litigant.

In the circumstances of this case, the circuit clerk's failure to preserve the envelope in which Kirk mailed her *pro se* motion, as required by Rule 24.035(c), requires that we treat Kirk's motion as timely.

We briefly address two additional matters. The circuit court suggested, both in comments from the bench and in its judgment, that Kirk's motion was subject to dismissal because Kirk had failed to sign the motion, and had not cured the lack of signature on or before the original filing deadline of December 19, 2017. The Missouri Supreme Court has held, however, "the signature requirement is not jurisdictional," and that the failure to sign a filing may be cured under Rule

---

[3]    Notably, at the evidentiary hearing the State argued that "[t]here has to be evidence of when the [*pro se* motion] went into the mail," beyond Kirk's inherently self-interested testimony. The State's argument only underscores the importance of the envelope and postmark as presumptively reliable, objective evidence of the date of mailing.

9

55.03(a), which provides that "[a]n unsigned filing . . . shall be stricken unless the omission is corrected promptly after being called to the attention of the . . . party filing same." *Glover v. State*, 225 S.W.3d 425, 428 & n.3 (Mo. banc 2007) (permitting filing of signed postconviction relief motion under Rule 55.03(a), while case is pending on appeal); *Carter v. State*, 181 S.W.3d 78, 79-80 (Mo. banc 2006); *Wallingford v. State*, 131 S.W.3d 781, 782 (Mo. banc 2004). In this case, Kirk was first informed of her failure to sign her *pro se* motion at the hearing held before the circuit court on March 19, 2018, and she filed a signed version of her motion eight days later, on March 27, 2018. Kirk's failure to sign her original *pro se* motion cannot justify dismissal.

Finally, the circuit court suggested that Kirk's motion was subject to dismissal because she had not pleaded facts establishing the timeliness of her postconviction motion in the motion itself. But the Missouri Supreme Court has recognized that, where a movant could not have been aware that his *pro se* motion would be deemed untimely until after drafting and transmitting the *pro se* motion, the movant could allege the facts establishing timeliness in an amended motion (something Kirk was not permitted to do, due to the circuit court's dismissal order). *Vogl v. State*, 437 S.W.3d 218, 227 (Mo. banc 2014); *Naylor v. State*, 569 S.W.3d 28, 31-32 (Mo. App. W.D. 2018) ("Movant's counsel may raise an exception to the filing time limits for the first time in an amended motion, as the movant may not have been aware that his circumstances fell within such an exception" at the time of filing his or her *pro se* motion; citing *Vogl*). The fact that Kirk's *pro se* motion may not have adequate pled facts establishing the timeliness of the motion was not fatal.

## Conclusion

In the circumstances of this case (where the timeliness of Kirk's *pro se* motion was a close question, and the circuit clerk's violation of Rule 24.035(c) denied Kirk of critical evidence she required to prove timeliness) we hold that Kirk's motion must be deemed timely. We

10

therefore reverse the circuit court's dismissal of Kirk's motion, and remand the case to the circuit court for further proceedings consistent with this opinion (including permitting appointed counsel to file an amended motion on Kirk's behalf).

_____
Anthony Rex Gabbert, Judge

All concur.