IN THE MISSOURI COURT OF APPEALS
 WESTERN DISTRICT
MONIQUE RANSOM, )
 )
 Appellant, )
 )
v. ) WD84175
 )
STATE OF MISSOURI, ) Opinion filed: November 30, 2021
 )
 Respondent. )

 APPEAL FROM THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
 THE HONORABLE JOEL P. FAHNESTOCK, JUDGE

 Division Three: Lisa White Hardwick, Presiding Judge,
 Gary D. Witt, Judge and Edward R. Ardini, Jr., Judge

 Monique Ransom (“Ransom”) appeals the denial of her Rule 29.15 motion for post-

conviction relief by the Circuit Court of Jackson County (“motion court”) following her

convictions for second-degree murder and armed criminal action. Because Ransom’s amended

post-conviction motion was untimely filed, we reverse and remand to the motion court for an

abandonment inquiry.

 Factual and Procedural Background

 In the underlying criminal case, Ransom was charged, under a theory of accomplice

liability, with one count of murder in the second degree and one count of armed criminal action

following the death of Eric Harrell (“Victim”). The following facts were established at trial:
 In December 2013, Ransom and her boyfriend, Rufus Antwine (“Antwine”), rented a home

on Quincy in Kansas City. Antwine did not stay there often, so Ransom invited Victim, a coworker,

to rent a room in the home.

 At 3:30 or 4:00 a.m. on December 5, 2013, Ransom was arrested for assaulting Victim.

While she was being arrested, Ransom belligerently stated that she was going to kill Victim and

that there would be an “unsolved homicide on Quincy.” Upon being released from jail, Ransom

was again arrested for refusing to pay for the cab that brought her home.

 The next morning, following her release from jail after the second arrest, Ransom said that

she was going to “go after” and “kill” Victim.

 Ransom got a ride from the jail from Shaunta Grant (“Grant”), who took Ransom to buy

new locks for Ransom’s home. When they arrived at Ransom’s home, Grant changed the locks

while Ransom threw Victim’s belongings into the front yard.

 That same day, a residence on Brooklyn was burglarized. The home was ransacked and

multiple items were stolen, including a shotgun, an AR-15 rifle, a Glock 21 .45-caliber handgun,

and a camouflage case containing the rifle and handgun.

 Later that afternoon, Antwine drove to Ransom’s home. While there, he noticed that the

.9mm gun he kept hidden in Ransom’s closet was missing.

 At 8:00 or 9:00 p.m., Ransom and Antwine went to pick up Omar Muhammed

(“Muhammed”), Ransom’s brother. An hour or so later, Antwine left Ransom and Muhammed at

Ransom’s home. Ransom and Muhammed indicated that they intended to scare Victim and “rough

him up a little bit[.]” After departing, Antwine remembered that he had left some groceries, so he

returned to Ransom’s home. As Antwine turned the corner onto Ransom’s street, he heard

gunshots. As he was approaching Ransom’s home, Ransom and Muhammed ran out of the house

 2
and got into Antwine’s vehicle. Antwine took Muhammed to an apartment near 31st Street and

dropped Ransom off at Grant’s home. While there, Ransom talked on her phone and was “loud

and pacing.” She also took a bath and wanted to throw away the clothes she had been wearing

when she arrived.

 Ransom’s neighbors reported hearing gun shots, and police arrived to find Victim’s body

in the doorway of Ransom’s home. Victim was lying face up with his hands above his sides and

blood around his head.

 Early the next morning, Grant drove Ransom back to her home. When they arrived,

Ransom began yelling for Antwine. Officers were dispatched shortly after, and when they arrived,

Ransom denied living at the home.

 Later that day, Ransom told a friend that Muhammed had “handled it for her” and had shot

Victim in the head and chest in the doorway of the home. Ransom also pointed to “what she

referred to as brain matter on the floor.” Ransom told her friend that she was present at the time of

the murder.

 Victim died from multiple gunshot wounds; he had been shot once in the head, once in the

stomach, and once in the right thigh. The medical examiner removed two .45-caliber bullets and

one .38-caliber bullet from Victim’s body. A firearms expert determined that the two types of

bullets could not have been fired from the same gun. The expert also explained that the .38-caliber

bullet could have been fired from a .9mm handgun.

 Officers searched Ransom’s home and, in the front bedroom, found her jacket, a .9mm

magazine with ten live rounds, and seven loose .9mm rounds. Those rounds had the same unusual

red primer as .9mm rounds found on the ground outside Ransom’s home next to a whiskey bottle

on which her fingerprints were found.

 3
 Ransom was arrested for the murder. At the time of her arrest, she was with a man who

lived next door to the home on Brooklyn that had been burglarized on the day of the murder.

Officers also arrested Muhammed and, during a search of his residence, found the rifle and

camouflage case that had been stolen from the Brooklyn residence. The Glock that had been in the

case was missing and never found.

 Phone records obtained by the FBI showed that Ransom and Muhammed communicated

often on the day before, day of, and day after the murder. Cell tower mapping put Muhammed in

the coverage area of the home on Brooklyn that was burglarized on the day that crime occurred.

The records also indicated that Antwine’s phone and Ransom’s phone were in the coverage area

of the murder scene between 10:43 p.m. and 10:53 p.m. The phones then connected with the cell

tower closest to the apartment of Muhammed’s girlfriend on Wyoming, where Antwine had

dropped Muhammed off, between 11:08 p.m. and 11:18 p.m.

 The jury found Ransom guilty of murder in the second degree and armed criminal action

under a theory of accomplice liability. Ransom was sentenced to life imprisonment for murder in

the second degree and a concurrent term of fifteen years for armed criminal action.

 Ransom appealed her convictions, which were affirmed by this Court in an order issued

pursuant to Rule 30.25(b). State v. Ransom, 559 S.W.3d 432 (Mo. App. W.D. 2018). Our mandate

issued on November 21, 2018. Wright filed her pro se Rule 29.15 motion for post-conviction relief

on January 24, 2019. Post-conviction counsel entered her appearance on January 28, 2019, and the

amended motion was due sixty days thereafter on March 29, 2019. On March 25, 2019, post-

conviction counsel sought a thirty-day extension. The motion court did not rule on the motion for

extension of time until April 12, 2019, after the initial sixty-day time limit for filing the amended

motion. Appointed counsel filed Ransom’s amended motion on April 24, 2019.

 4
 In the amended motion, post-conviction counsel raised four claims, none of which had been

raised in Ransom’s pro se motion. Following an evidentiary hearing, the motion court denied the

claims asserted in Ransom’s amended motion for post-conviction relief. Ransom appeals from the

denial of her amended post-conviction motion.

 Discussion

 Ransom raises three points on appeal, each arguing that the motion court erred in denying

her post-conviction claims that she received ineffective assistance of trial counsel. In Point I,

Ransom asserts that trial counsel was ineffective for advising her not to testify; in Point II, Ransom

alleges that trial counsel was ineffective for failing to cross-examine Antwine about inconsistent

statements he made to police; and in Point III, she claims that trial counsel was ineffective for

failing to object to the DNA evidence presented by the State. Before we consider these claims of

error, however, we must address the State’s argument that Ransom’s amended motion for post-

conviction relief was not timely filed.

 The time limits in Rule 29.15 are “mandatory and constitutional.” Price v. State, 422

S.W.3d 292, 297 (Mo. banc 2014) (citing Smith v. State, 887 S.W.2d 601, 602 (Mo. banc 1994).

These time limits cannot be waived, and both motion courts and appellate courts are required to

enforce them. Id. (citing Dorris v. State, 360 S.W.3d 260, 268 (Mo. banc 2012)). Rule 29.15(g)1

sets out the time limits for filing an amended motion:

 If an appeal of the judgment sought to be vacated, set aside, or corrected is taken,
 the amended motion . . . shall be filed within 60 days of the earlier of the date both
 the mandate of the appellate court is issued and:

 (1) Counsel is appointed, or

1
 References to Rule 29.15(g) are to the 2017 version. Rule 29.15 was amended, effective January 2018. Rule 29.15(m)
provides that “[i]f sentence was pronounced prior to January 1, 2018, postconviction relief shall continue to be
governed by the provisions of Rule 29.15 in effect on the date the motion was filed or December 31, 2017, whichever
is earlier.” Ransom was sentenced on July 7, 2017; therefore, the 2017 version of Rule 29.15 governs this case.

 5
 (2) An entry of appearance is filed by any counsel that is not appointed but enters
 an appearance on behalf of movant.

The rule additionally states that “[t]he court may extend the time for filing the amended motion

for one additional period not to exceed 30 days.” Rule 29.15(g).

 Post-conviction counsel entered her appearance on January 28, 2019, thus triggering the

initial sixty-day time period for filing an amended motion. The amended motion therefore was due

on March 29, 2019. Prior to that deadline, on March 25, 2019, post-conviction counsel filed a

motion seeking a thirty-day extension of time to file the amended motion. The motion court did

not rule on post-conviction counsel’s motion prior to the amended motion’s original due date.

Instead, the motion court purported to grant the motion for extension nearly two weeks later on

April 12, 2019. Post-conviction counsel filed the amended motion within the time she had

requested in the motion for extension of time.

 The State alleges that the motion court lacked authority to grant the extension after the time

limit for filing the amended motion had expired on March 29, 2019. We agree. “[T]he discretion

of the motion court to extend the time to file an amended motion must be exercised within the

time the amended motion is initially due.” Perkins v. State, 569 S.W.3d 426, 435 (Mo. App. W.D.

2018) (citing Clemmons v. State, 785 S.W.2d 524, 527 (Mo. banc 1990)) (emphasis in original).

This principle was recently reiterated by the Eastern District of this Court in Earl v. State, 628

S.W.3d 695 (Mo. App. E.D. 2021), under facts nearly identical to those present here. In that case,

post-conviction counsel moved for a thirty-day extension of time to file the amended motion on

the date that he entered into the case. Earl, 628 S.W.3d at 698. The amended motion was due on

March 6, 2017, but the trial court did not grant the motion for extension of time until April 4, 2017.

Id. Post-conviction counsel filed the amended motion on April 5, 2017. Id. Consistent with the

position articulated by this Court in Perkins, the eastern district held that the motion court lacked

 6
authority to grant the extension upon expiration of the original sixty-day time period. Id. at 699.

The court thus concluded that the amended motion filed on April 5, 2017, was untimely.2 Id.

 Similarly, here, the motion court did not rule on post-conviction counsel’s request for an

extension within the original sixty-day period for filing the amended motion. Therefore, like in

Earl, the motion court lacked the authority to grant the extension, and the amended motion filed

outside of the sixty-day window was untimely.

 Because the amended motion was untimely filed, the motion court must consider whether

Ransom was abandoned by post-conviction counsel. Under such circumstances, “the motion court

has a duty to undertake an ‘independent inquiry . . .’ to determine if abandonment occurred.”

Moore v. State, 458 S.W.3d 822, 825 (Mo. banc 2015) (quoting Vogl v. State, 437 S.W.3d 218,

228-29 (Mo. banc 2014)). “If the motion court finds that a movant has not been abandoned, the

motion court should not permit the filing of the amended motion and should proceed with

adjudicating the movant’s initial motion.” Id. (citation omitted). “If the motion court determines

that the movant was abandoned by appointed counsel’s untimely filing of an amended motion, the

court is directed to permit the untimely filing.” Id. at 826.

 The motion court failed to conduct an inquiry into whether post-conviction counsel

abandoned Ransom. “When the independent inquiry is required but not done, this Court will

remand the case because the motion court is the appropriate forum to conduct such an inquiry.”3

2
 The Southern District of this Court recently reached a different result in Scrivens v. State, 630 S.W.3d 917 (Mo. App.
S.D. 2021), in which it held that a motion court may grant an extension after the initial filing period has expired.
Scrivens, 630 S.W.3d at 918 n.2. The Court stated that “[b]ased on our published decisions, [the Southern District]
and the Eastern District would find the amended motion was filed timely because the amended motion was filed within
the second extension as belatedly granted[.]” Id. In making this statement, the Southern District failed to acknowledge
its own prior decision in Rutherford v. State, 192 S.W.3d 746 (Mo. App. S.D. 2006), or the Eastern District’s decision
in Earl v. State, 628 S.W.3d 695 (Mo. App. E.D. 2021)—both of which are in accord with our conclusion here and
the binding precedent from our Supreme Court in Clemmons, 785 S.W.2d at 527.
3
 The exception to the necessity of an abandonment inquiry when the claims raised in a movant’s pro se motion are
adjudicated along with the claims in the amended motion does not apply here. See Childers v. State, 462 S.W.3d 825,

 7
Moore, 458 S.W.3d at 826 (citing Sanders v. State, 807 S.W.2d 493, 495 (Mo. banc 1991)).

Accordingly, we must reverse and remand this case to permit the motion court to conduct the

required inquiry to determine if Ransom was abandoned by post-conviction counsel.

 Conclusion

 This case is reversed and remanded for the motion court to conduct an abandonment

inquiry.

 __________________________________________
 EDWARD R. ARDINI, JR., JUDGE

All concur.

828 (Mo. App. E.D. 2015). Ransom’s pro se motion did not raise identical claims to those raised in the amended
motion.

 8