

# In the Missouri Court of Appeals
## Eastern District

### DIVISION THREE

| | | |
|---|---|---|
| DAVID L. ROSS, | ) | No. ED110423 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Cape Girardeau County |
| v. | ) | Cause No. 20CG-CC00339 |
| | ) | |
| STATE OF MISSOURI, | ) | Honorable Scott A. Lipke |
| | ) | |
| Respondent, | ) | Filed: January 17, 2023 |

### OPINION

### I. Introduction

David L. Ross appeals the judgment denying his Rule 24.035 motion without an evidentiary hearing. The judgment contains no findings of fact or conclusions of law regarding the timeliness of either Ross's pro se motion or the amended motion filed by appointed counsel. We reverse and remand.

### II. Factual and Procedural Background

Ross entered an *Alford* plea[1] to one count of first-degree domestic assault. The circuit court sentenced Ross on November 18, 2019. Ross did not appeal, and therefore his postconviction motion was due 180 days later on May 18, 2020. *See* Rule 24.035(b).[2] Ross did not file a pro se

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 37 (1970).
[2] All rule references are to the Missouri Supreme Court Rules (2018), unless otherwise noted.

motion until November 19, 2020, alleging that due to the COVID-19 pandemic he had been "hindered from filing this motion in a timely manner." He stated that "since the pandemic began this facility has been plagued by lockdowns, quarantines, and riots" and that "over the period of the pandemic there has been limited access to the library and law library."

The circuit court appointed postconviction counsel. Counsel sought and was granted an extension of time to file an amended motion, making it due ninety days after the transcript of the guilty plea hearing was filed on April 29, 2021. *See* Rule 24.035(g). Before that filing deadline, counsel sought a second extension, which was also granted but not until the deadline had passed. The parties agree that this was ineffective to extend the deadline. *See Earl v. State*, 628 S.W.3d 695, 699 (Mo. App. E.D. 2021) (holding that circuit court is without discretion to extend a deadline after it has passed). Thus, it is undisputed that the amended motion was untimely when it was filed on May 27, 2021. Ross acknowledged this in the amended motion and asked the circuit court to find that he had been abandoned by postconviction counsel.

Ross also acknowledged in the amended motion that his pro se motion was untimely, but asserted that circumstances related to the COVID-19 pandemic that were beyond his control excused the late filing. Ross stated that "COVID-19 restrictions at the Missouri Department of Corrections ("DOC") impeded [his] ability to timely file." If granted an evidentiary hearing, Ross alleged, he would testify that he was delivered to the Eastern Reception, Diagnostic, and Correction Center on November 20, 2019, two days after his sentence was imposed, and was then transferred to the Missouri Eastern Correctional Center on March 12, 2020. Ross stated that he would introduce evidence that on March 2, 2020, the Governor signed an executive order declaring a state of emergency in Missouri due to COVID-19. Thereafter, the DOC began implementing "enhanced pandemic protocols" at every prison including "using isolation cells, wings, and units

for offenders exhibiting signs of communicable diseases." Ross attested in the amended motion that these pandemic protocols "prevented the timely filing of his Rule 24.035 motion" because:

> (1) his housing unit was under lockdown for several weeks at a time due to suspected COVID-19 cases; (2) the pandemic protocols prevented him from accessing the law library to research and prepare his motion; (3) he did not have a copy of Form 40 while under lockdown and due to short-staffing at DOC was not sure how to obtain a copy without going to the library; and (4) he was extremely concerned for his health and safety during this time and stayed mostly in his cell to limit his possible exposure.

Ross contended that these COVID-19 restrictions were beyond his control and requested that the circuit court excuse his late filing.

The circuit court denied the amended motion without an evidentiary hearing. In its findings of fact and conclusions of law, the circuit court acknowledged Ross's argument that COVID-19 protocols prevented him from timely filing his pro se motion, but it did not issue any findings or conclusions regarding the timeliness of that motion. Instead, it stated: "Out of an abundance of caution, the Court will only address" the substantive claim in Ross's motion—namely, that plea counsel was ineffective for pressuring and coercing him to enter an *Alford* plea—which it denied. The circuit court also did not address the timeliness of the amended motion or Ross's request to deem him abandoned. Ross filed a motion to amend the judgment under Rule 78.07(c) (2022), asking the circuit court to issue findings and conclusions regarding the timeliness of both the pro se and amended motions as required by Rule 24.035(j) (2022). That motion was not ruled on and is deemed overruled by Rule 78.06 (2022). This appeal follows.

### III.  Discussion

On appeal, there is no dispute that Ross's pro se motion and amended motion were untimely and that the circuit court erred in failing to issue findings and conclusions on these issues. The

3

only question is whether remand to the circuit court to make the required findings is necessary in this case. We conclude that it is.

### *Time Limits and Exceptions*

We start with the rule that the time limits for filing motions under Rule 24.035 are mandatory and strictly enforced. *Palmer v. State*, 643 S.W.3d 673, 676 (Mo. App. E.D. 2022). The "[f]ailure to file a motion within the time provided by this Rule 24.035 shall constitute a complete waiver of any right to proceed" thereunder. Rule 24.035(b). If a pro se motion is not timely filed, then the circuit court does not have authority to consider the merits of a claim raised therein and is "compelled to dismiss" the untimely motion. *Palmer*, 643 S.W.3d at 676. Therefore, a movant must plead and prove facts showing that the pro se motion was timely filed or that the untimeliness was excused because of a recognized exception to the time limits. *Dorris v. State*, 360 S.W.3d 260, 267 (Mo. banc 2012).[3]

Ross did not file his pro se motion within the time limits applicable to his case. *See* Rule 24.035(b). As a result, in his pro se motion and amended motion,[4] Ross alleged that he fell within a recognized exception to the mandatory time limits, namely that "very rare circumstances" beyond his control caused his late filing and "justified a late receipt of the motion by the proper court." *Moore v. State*, 328 S.W.3d 700, 703 (Mo. banc 2010) (internal quotation marks and citations omitted). Ross alleged that he was unable to timely prepare or file his motion because of the COVID-19 pandemic protocols imposed on him by the DOC, which were beyond his control.

---

[3] A movant can also meet this burden by pleading that the court misfiled the motion. *Dorris*, 360 S.W.3d at 267.

[4] It is permissible to consider the timeliness allegations in both the pro se and the amended motion. *Jackson v. State*, 597 S.W.3d 449, 452–53 (Mo. App. E.D. 2020); *see also Vogl v. State*, 437 S.W.3d 218, 227 n.12 (Mo. banc 2014).

4

***Required Findings and Conclusions***

Because an untimely pro se motion deprives the circuit court of authority to reach the movant's substantive claims, it is imperative that the court determine whether the pro se motion is timely before proceeding to rule on the merits. To that end, Rule 24.035(j) expressly requires the circuit court to issue findings of fact and conclusions of law "on all issues presented, including the timeliness of the pro se motion, the timeliness of the amended motion, and, when applicable, whether movant was abandoned by postconviction counsel." Rule 24.035(j) (2022).[5] The directives of this rule—and its companion Rule 29.15(j), the previous versions of those rules, and their predecessor Rule 27.26—have long been held to be "clear and unambiguous" and "not a mere formality." *Brown v. State*, 810 S.W.2d 716, 717-18 (Mo. App. W.D. 1991).

Moreover, appellate courts must strictly enforce the rule requiring findings of fact and conclusions of law. *State v. Jordan*, 793 S.W.2d 905, 907 (Mo. App. E.D. 1990) (citing *Fields v. State*, 572 S.W.2d 477, 483 (Mo. banc 1978)). Rule 24.035(k) limits appellate court review of the circuit court's actions in postconviction cases to "a determination of whether the findings and conclusions of the trial court are clearly erroneous." Only when the circuit court makes findings of fact and conclusions of law can the appellate court engage in the kind of review contemplated by the rule. *Fields*, 572 S.W.2d at 483. Without findings and conclusions, the appellate court necessarily must "engage in *de novo* review, which is not permitted under Rule 24.035(k)." *Jackson v. State*, 366 S.W.3d 656, 660 (Mo. App. E.D. 2012).

---

[5] This version of the rule became effective November 4, 2021, five days before the judgment was entered in this case, and this was the version cited by Ross in his motion to amend the judgment under Rule 78.07(c). The previous version of the rule did not specify that findings and conclusions were required on these timeliness issues, but it did mandate findings and conclusions "on all issues presented." Under either version, findings and conclusions on the timeliness issues in this case were required because they were squarely presented to the circuit court in the pro se and amended motions. Moreover, after the judgment, Ross expressly requested findings on the timeliness issues in a Rule 78.07(c) motion. *See Pendleton v. State*, 570 S.W.3d. 658, 663-64 (Mo. App. W.D. 2019) (reversing and remanding for timeliness findings where they had been specifically requested by way of Rule 78.07(c) motion).

Here, although the circuit court acknowledged Ross's argument for why his untimely motion should be excused, it did not issue any findings or conclusions on the matter. The parties agree that this constituted error.

### *Remand Requirement and Exceptions*

In general, "failure to issue findings and conclusions as contemplated by Rule 24.035(j) mandates reversal and remand." *Jackson*, 366 S.W.3d at 660. But several exceptions to this rule have developed in the case law involving situations where remand is unnecessary. *See Mitchell v. State*, 510 S.W.3d 366, 371 (Mo. App. E.D. 2017) (listing exceptions). The State contends that remand is unnecessary here because, even if all of Ross's allegations regarding timeliness are true, they do not excuse his untimely filing. The State suggests this situation fits two exceptions to the remand requirement: when the motion is "insufficient" and when it is clear the movant is entitled to no relief as a matter of law and will suffer no prejudice by forgoing remand. We do not agree that either exception applies here.

In support of its contention that remand is not required when the "motion itself is insufficient," the State cites *Mitchell v. State*. *Mitchell* simply identified "insufficiency of the motion" as a possible exception to the remand requirement, but it did not apply it. *Id.* at 371. In fact, although it is often cited by courts in lists of such exceptions, "insufficiency of the motion" has rarely been applied with any analysis and not in any scenario comparable to this case. There has been, in other words, little discussion of what renders a motion "insufficient" for purposes of this exception.

The concept that remand is not required when the motion is insufficient makes the most sense in cases where a defect in the motion renders it legally insufficient to justify relief. For example, in *Johnson v. State*, the exception was applied because the motion was "plainly a

6

successive motion." 470 S.W.3d 1, 5 (Mo. App. W.D. 2015). Rule 24.035(l) states unequivocally that "[t]he circuit court shall not entertain successive motions." The appellate court in *Johnson* held that the circuit court's failure to issue any findings or conclusions did not require remand because the successive motion was "legally insufficient" and the circuit court had no authority to consider it in the first place. *Id*. Similarly, in *State v. Waters*, the exception was applied in the context of a ruling on a motion for postconviction DNA testing, which, like rulings on Rule 24.035 and Rule 29.15 motions, must contain findings of fact and conclusions of law. 221 S.W.3d 416, 419 (Mo. App. W.D. 2006); *see* § 547.035.8 RSMo Supp 2001. The appellate court found that remand for lack of the required findings was not necessary because the motion was "deficient" and "insufficient" in that it lacked one of the statutorily mandated allegations. *Waters*, 221 S.W.3d at 419.

Unlike *Johnson* and *Waters*, the State argues that Ross's motion is "insufficient" because it does not warrant an evidentiary hearing. But a motion that does not entitle the movant to an evidentiary hearing does not excuse the circuit court from its obligation to make findings and conclusions. To the contrary:

> If the court shall determine the motion and the files and records of the case conclusively show that the movant is entitled to no relief, a hearing shall not be held. *In such case, the court shall issue findings of fact and conclusions of law as provided in Rule 24.035(j).*

Rule 24.035(h). Rule 24.035(j) is clear that findings and conclusions are required "*whether or not a hearing is held*." (emphasis added).

To find remand unnecessary solely on the ground that the motion did not warrant an evidentiary hearing would be contrary to the rule. Doing so would mean that a circuit court could simply deny a motion without findings or conclusions in the first instance, await an appellate court's determination as to whether the motion warranted a hearing, and only be required to issue

7

the findings and conclusions if and when the appellate court remands and only on such issues that the appellate court suggests may have merit. Such a result would swallow whole the mandatory requirements of Rule 24.035(h) and (j), and it would invite appellate courts to improperly expand the limited review mandated by Rule 24.035(k). The insufficiency exception is, therefore, inapplicable here.

The only support cited by the State for the second exception, is a parenthetical citation to *Jackson v. State*, 643 S.W.3d 640 (Mo. App. S.D. 2022), for the proposition that remand is useless where it is clear the movant is entitled to no relief as a matter of law and will suffer no prejudice. However, as *Jackson* states, that exception from the remand requirement applies only when the circuit court failed to issue a conclusion of law on an *isolated* issue. *Id*. at 646 (emphasis added). It would not be appropriate to apply that exception in a case like this, where the circuit court did not issue any findings of fact or conclusions of law on the critical matter of the timeliness of a pro se motion. *See Fountain-Bey v. State*, 24 S.W.3d 716, 718 (Mo. App. E.D. 1999) (distinguishing a simple failure to provide a conclusion of law on one allegation among otherwise extensive findings and conclusions from a complete absence of findings or conclusions on any allegations).

Additionally, the circumstances under which the *Jackson* court decided to apply this exception to the remand requirement are distinguishable. In *Jackson*, the circuit court failed to issues findings and conclusions related to the timeliness of the pro se motion. 643 S.W.3d at 644. But the movant in that case had not pleaded or presented any evidence at the evidentiary hearing to show that a recognized basis for excusing the untimely motion applied. 643 S.W.3d at 645 n.7. Instead, he argued that a previously filed premature motion should be reinstated and render the late filing timely. *Id*. at 644-45. The appellate court found the law was "clear and fatal" to this argument and, therefore, it failed as a matter of law. *Id*. at 646. The court concluded that remand

8

for findings on timeliness was unnecessary and that the movant would not be prejudiced because no cognizable excuse for the late filing had been pleaded or proven at the evidentiary hearing. *Id*. Here, Ross alleged that a recognized exception for circumstances beyond his control applied to excuse his untimely filing. And the existing precedent regarding this exception is not clearly fatal to its application here. Moreover, unlike in *Jackson*, Ross has not had the opportunity to present evidence on his argument for applying that exception to this case. Remand here cannot be deemed "unnecessary" and forgoing it may be prejudicial.

We note, however, that Ross faces an uphill battle. The circumstances that have excused an untimely filing are "very rare." In perhaps the most notable example, *McFadden v. State*, 256 S.W.3d 103 (Mo. banc 2008), the movant's untimely motion was excused only because the movant demonstrated that he had prepared his motion well before the deadline and provided it to his attorney for filing. The movant's attorney then "actively interfered" by filing the motion one day late. *Id.* at 109. Since *McFadden* was decided, the Supreme Court of Missouri has held that the operative fact in that case was that the movant relied on the attorney only for delivery of the motion, which the movant could not do on his own as a result of his incarceration. *See Price v. State*, 422 S.W.3d 292, 304-05 (Mo. banc 2014).

Thus, the application of this "active interference" exception has largely been limited to circumstances when "an inmate writes his initial postconviction motion and takes every step he reasonably can within the limitations of his confinement to see that the motion is filed on time" but "the active interference of a third party beyond the inmate's control frustrates those efforts and renders the inmate's motion untimely." *Id.* at 302. Courts may excuse an untimely filing in such scenarios because of the "practical reality" that, unlike other litigants, an inmate cannot initiate

9

postconviction proceedings "without relying on the assistance of one or more third parties to take the motion from the inmate and deliver it to the circuit clerk for filing." *Id.*

In the active interference cases relied on by the State, the courts were not willing to excuse an untimely filing because the movant did not prepare a motion or take any other action to ensure its timely filing and instead relied entirely on counsel to fulfill all of his responsibilities under the rules. *See id.* at 302; *Propst v. State*, 535 S.W.3d 733, 736 (Mo. banc 2017); *Pool v. State*, 621 S.W.3d 640, 643 (Mo. App. E.D. 2021); *McDaniel v. State,* 608 S.W.3d 763, 770 (Mo. App. S.D. 2020); *Gunn v. State*, 484 S.W.3d 106, 110 (Mo. App. W.D. 2015). By relying on counsel, the movant in those cases "took the same risk that every other civil litigant takes when retaining counsel, i.e., he chose to substitute counsel's performance for his own and bound himself to the former as though it were the latter." *Price*, 422 S.W.3d at 302.

Ross's allegations are different from those alleged in the typical active interference case. He alleges that an unprecedented set of circumstances outside of his control, namely the COVID-19 protocols, created practical limitations on his ability to timely initiate his postconviction proceeding *beyond* having to rely on a third party to deliver his motion. Ross alleged that the DOC's COVID-19 protocols interfered with his ability to even prepare an initial motion: he did not have a Form 40, did not have access to the library where he would normally obtain a Form 40, and did not have sufficient staff to ask for assistance in obtaining a Form 40 from somewhere other than the library.

These allegations do not squarely fit into the third-party active interference scenario discussed in the case law above.[6] But they are also not squarely foreclosed by it. Ross's allegation

---

[6] The only case to address similar allegations regarding the impact of COVID-19 protocols on postconviction filing deadlines is distinguishable. In *McCartney v. State*, the court concluded, *after a hearing*, that the movant had not proven the "active interference" exception should apply because he admitted that he had received a Form 40 before lockdown and that he had multiple opportunities prior to his filing deadline to access the library after lockdowns

that active interference by the DOC in the form of COVID-19 protocols prevented him from both preparing and filing his postconviction motion in a timely manner will likely be an exceedingly difficult set of circumstances to prove. But because the circuit court did not make any findings of fact or conclusions of law on this issue, that matter is not before us to review.

### IV. Conclusion

The judgment is reversed. The State has not persuaded this Court to forgo remand in this case. Therefore, we remand for further proceedings consistent with this opinion and with the following directions:

> (a) The circuit court must determine if an evidentiary hearing is warranted on Ross's claim that the pro se motion's untimeliness should be excused. If no hearing is held, then the circuit court must still issue findings of fact and conclusions of law to that effect and dismiss the motion as untimely.
>
> (b) If the circuit court holds a hearing, but Ross fails to prove by a preponderance of the evidence that the untimeliness of his pro se motion should be excused, then it must still issue findings of fact and conclusions of law to that effect and dismiss the motion as untimely.
>
> (c) If the circuit court holds a hearing, and Ross proves by a preponderance of the evidence that the untimeliness of his pro se motion should be excused, then it must first determine whether the untimely amended motion should be treated as timely due to counsel's abandonment of Ross before it can proceed to address the merits of any of Ross's claims. Whatever the court determines regarding abandonment or the merits, its judgment must include findings of fact and conclusions of law on the timeliness of both the pro se and amended motion and whether Ross was abandoned.

---

ended. 655 S.W.3d 380, 384 (Mo. App. S.D. 2022). Ross's allegations are that he did *not* have a Form 40 prior to lockdown, did *not* have access to the library during lockdown, and could not find out how to otherwise access a Form 40 due to short staffing.

_____
John P. Torbitzky, J.

Gary M. Gaertner, Jr., P.J., and
Cristian M. Stevens, J., concur.

12